## 7643. BRYANT *v.* DICKERSON & ADAIR.

The motion for a new-trial was based on the general grounds only, and since there was testimony to support the verdict, this court will not interfere with it.

DECIDED DECEMBER 11, 1916.

Levy and claim; from Henry superior court—Judge Searcy. May 27, 1916.

*C. L. Redman,* for plaintiff in error. *E. M. Smith,* contra.

WADE, C. J. Two mules were levied upon as the property of W. R. Mason, under an execution based upon a judgment against him in favor of Dickerson, obtained in April, 1915, and a claim to the property was interposed by Mrs. Bryant. The claim affidavit was made by the defendant, Mason, as "agent" for Mrs. Bryant, and her name was signed to the claim bond as principal "by W. R. Mason, agent." On the trial the defendant in fi. fa. testified, that on November 7, 1914, he sold the mules levied upon to the claimant, the consideration being money which the claimant advanced to him to complete the payment of the purchase-price of the mules, and money previously borrowed by him from the claimant to make his crop during the year 1914; that on the same day the claimant sold the mules back to him, with a two-horse wagon and harness, taking therefor a retention-of-title note for $600, due October 1, 1915, as he had rented lands from the claimant, who was a sister of his wife, and expected to use the mules on her lands, where he lived during the year 1915, with the understanding that he was to keep and work them and make the money to pay the claimant what he owed her. The retention-of-title note was duly recorded November 14, 1914. So far as the record discloses, the claimant herself did not testify on the trial of the claim case, and there is nothing to indicate that she was even present at the trial, but seemingly the defendant in fi. fa. was the sole person interested for the claimant in the outcome of the trial, except the attorney who nominally at least represented her. It will be observed that while the defendant in fi. fa. testified

that he "borrowed money from the claimant to pay for the mules, and that he also owed her money he borrowed from her to make his crop during the year 1914," and further "that he had never paid claimant *the money borrowed*" (italics ours), and that the title to the mules was in the claimant "until he paid her the sum represented by the note as described," he did not testify how much money he borrowed from her to pay on the purchase-price of the mules; nor did he ever say how much money he had borrowed from her to make his crop during the year 1914, or what amount in fact he was due the claimant when, according to his testimony, he sold her the two mules, and when she resold them to him; and while he asserted that he had never paid the claimant the money borrowed from her, and the title to the property was in her until payment of the $600 represented by the note, it does not appear from his evidence that he in fact then owed or ever owed her as much as $600, or whether the amount borrowed was one cent, $50, $100, or any other sum. Every word of testimony from him might be accepted as the literal truth, and yet the fact might be that the amount borrowed from his sister-in-law was no more than five cents, or some other insignificant amount, which, added to other funds, paid the balance of the purchase-price on the mules; and that only a like insignificant sum was borrowed from her to make his crop during the year 1914. If this was true, notwithstanding title was reserved by contract in her in the property reconveyed to him, his testimony that the mules were her property "until he paid her the sum represented by the note as described," would express merely a conclusion on his part, and a conclusion that would be erroneous; for, if the amount advanced by her to pay the balance due on the purchase-price of the property was, for instance, $1, and the further amount advanced to him by her to aid in making the crop was only $1, and thus the total amount that he owed her was only $2, the title to the property described in the retention-of-title note would, on payment of this amount, pass to him and be subject to executions against him, notwithstanding the note indicated an apparent indebtedness of $600 or other large sum. In other words, the statement that the title to the mules was vested in the claimant until payment of the amount apparently due by the terms of the note is inaccurate, as such title would only remain in her until payment of the amount that the debtor actually owed her.

6

As already pointed out, there is not one word of testimony from the defendant in fi. fa., or elsewhere in the record, that shows or tends to show what amount he actually owed the claimant, either at the time the retention-of-title note, upon which the claimant rested her right to recover, was executed, or at the day of the trial.

A claim case is in the nature of an equitable proceeding, and, where transactions between relatives are under review, slight circumstances are often sufficient to induce belief on the part of a jury that there was fraud or collusion between the parties, and authorize them to find against the claimant and in favor of the plaintiff in fi. fa. A claimant must, generally speaking, come into court with hands unstained by any suggestion of collusion with the defendant in fi. fa. to defeat or defraud the creditors of the latter; and a claimant who fails to make a clear showing of both legal and moral right to the property in dispute must generally suffer the loss thereof at the hands of a jury, if there be any circumstances in proof, even though slight, which may be sufficient to authorize the inference of fraud or collusion. The fact that the claim affidavit and bond in this case were not made by the claimant herself, nor by her attorney of record, but were signed by the defendant in fi. fa. as her professed "agent" (notwithstanding that a defendant in fi. fa. is presumed to be interested in the payment of his debts, and therefore to be upon the side of the plaintiff in fi. fa. rather than upon that of the claimant), and the further fact that the claimant did not appear as a witness in the case, and was not sufficiently interested in the result to attend the trial thereof (so far as is disclosed by the record), are significant. In addition to this, the lack of definiteness and certainty in the testimony of the defendant in fi. fa., who appeared as the sole witness for the claimant, as to the amount he procured from his sister-in-law, and as to what in fact he actually owed her at the time he sold to her the mules in November, 1914, was a circumstance tending to support the finding of the jury that the transaction between the defendant in fi. fa. and the claimant was not bona fide, but that its purpose was to aid her to escape the payment of the debt due Dickerson, which, though not then in judgment, was for goods sold to the defendant in fi. fa. during the years 1912 and 1913, and was then probably long past due, and perhaps to the eye of the defendant in fi. fa. an impending evil

about to overwhelm him, to•be avoided at all risk and in any man-
ner available. There are other minor circumstances in the record,
which coupled with the points specially referred to above, might
have been sufficient to authorize the verdict finding the property
subject; and since the record as a whole discloses enough to sup-
port the verdict, this court will not set it aside.

*Judgment affirmed. Hodges, J., absent.*