16388.  PALMER-MURPHEY COMPANY *v.* FRUIT HAVEN FARM.

Although A, an agent of B (a corporation), may have no authority to make binding contracts for and in behalf of B, yet if A executes with C a contract for B, and the goods—the subject-matter of the contract —are delivered by C, the seller, to B, the purchaser, and B treats the contract as a valid and binding one by accepting the goods and paying for them, then where subsequently A, as agent for B, executes another contract with C, B is estopped from denying that A had authority to execute the second contract, these two transactions being the only ones between B and C, and C having never been notified by B, or by anyone else, until after the execution by A of the contract sued on and its

acceptance by C, that A was without authority to execute binding contracts for B.

DECIDED JUNE 11, 1925.

Complaint; from city court of Greenville—Judge Revill. March 10, 1925.

*George P. Whitman, N. F. Culpepper,* for plaintiff.

*J. F. Hatchett, Terrell & Terrell,* for defendant.

BROYLES, C. J.    Palmer-Murphey Company brought suit against Fruit Haven Farm (a corporation) for damages for the alleged breach of an alleged written contract for the purchase of 100 tons of nitrate of soda, plaintiff being the seller and defendant the buyer.    The damages sought to be recovered were the difference between the contract-price and the market price at the time and place of delivery, the time being December, 1920, and the place, Savannah, Ga.    The alleged contract was signed *on behalf of the defendant* (at least this was the contention of the plaintiff, although denied by the defendant) as follows; "Fruit Haven Farm by J. O. Langdon," and was accepted by the plaintiff.    Subsequent thereto, and before the date for shipment of the goods, the plaintiff was notified by the defendant that Langdon was merely a bookkeeper for the defendant, and had no authority to execute the contract in question, and that it was repudiated by the defendant.    Upon the trial the evidence authorized a finding that Langdon had no authority to execute contracts for the defendant.    However, the undisputed evidence disclosed that prior to the execution of the contract sued on, and in December, 1919, the plaintiff had sold the defendant 60 tons of acid phosphate, and that the phosphate was received by the defendant and paid for by it, and that the written contract under which it was sold was executed on behalf of the defendant just as was the contract sued on, to wit, "Fruit Haven Farm by J. O. Langdon."    It is true that some portions of the testimony of J. O. Langdon (the principal witness for the defendant) tended to show that perhaps this phosphate was ordered for Betts (the president of the defendant corporation) personally, and not for the defendant; but when Langdon's testimony is properly construed as a whole, these portions of his testimony are without probative value.    It is well settled that when the testimony of a principal witness is vague, equivocal and self-contradictory, it should be construed most strongly against the cause that he is

testifying for. The portions of Langdon's testimony referred to were exceedingly vague and equivocal and were contradicted by other parts of his testimony and by the documentary evidence introduced. And in this connection a most significant and compelling fact is that in the voluminous testimony of Betts himself there is not a line or a word tending to corroborate in the slightest degree the vague, equivocal and self-contradictory testimony of Langdon that perhaps the phosphate (the subject-matter of the first contract) was ordered for Betts personally, and not for the defendant corporation. Hence, it is our opinion, and is so adjudged, that the evidence demanded a finding that the phosphate was bought, received, and paid for by the defendant corporation. This being true, the defendant was estopped, legally and morally, from denying the authority of Langdon to execute the contract sued on, the evidence being undisputed that there were no dealings between the parties except the two transactions referred to, and that no notice of any kind or character had been given to the plaintiff, prior to the execution of the contract sued on, that Langdon was without authority to execute contracts for the defendant. See, in this connection, *Filzgerald Oil Co.* v. *Farmers Oil Co.,* 3 *Ga. App.* 215 (59 S. E. 713); *Germain Co.* v. *Bank,* 14 *Ga. App.* 88 (1), 93, 94 (80 S. E. 302); *Bacon* v. *Dannenberg,* 24 *Ga. App.* 540 (4) (101 S. E. 699). The evidence also demanded a finding that the defendant had breached the contract sued on, without legal cause, and that the plaintiff had been damaged in a substantial amount by such breach.

It follows that a verdict for the plaintiff was demanded; that the verdict in favor of the defendant was contrary to law and the evidence, and that the court should have granted a new trial on the general grounds of the motion for a new trial. This ruling being controlling in the case, it is unnecessary to consider the special assignments of error.

*Judgment reversed. Luke and Bloodworth, JJ., concur.*