23754. SCRUGGS *v.* BLACKSHEAR MANUFACTURING CO.

DECIDED MAY 23, 1934.

*H. L. Causey, A. J. Tuten,* for plaintiff in error.
*Memory & Memory,* contra.

BROYLES, C. J.  Blackshear Manufacturing Company obtained judgment against Mrs. B. A. Scruggs and J. E. Scruggs as principals and G. W. Houston as surety on a promissory note.  The execution issued thereon was levied on certain personal property which, according to the return of the levying officer, was "found in possession of John E. Scruggs and B. A. Scruggs," the two principal defendants.  J. B. Scruggs, son of said defendants, interposed a claim to the property, and upon a trial of the issue the jury returned a verdict finding the property subject to the levy.  The claimant made a motion for a new trial, which was overruled, and on this judgment he assigns error.

The contention of the claimant is that the defendant in fi.

fa., Mrs. B. A. Scruggs, prior to the execution, sold the equity in a farm and the personal property in question to her daughter Mrs. Vivian Scruggs Dixon for $1000, and that Mrs. Dixon borrowed $500 of the purchase-price from her brother J. B. Scruggs, the claimant, and made him a bill of sale to the property to secure the debt. The plaintiff in fi. fa. contends, in effect, that the conveyance of the property from mother to daughter and from the daughter to her brother the claimant, was not a bona fide transaction, but was a fraudulent scheme to defeat the collection of a note which was past due at the time of the alleged conveyance.

A judgment in favor of the plaintiff company was formerly reversed by this court because of the insufficiency of plaintiff's evidence. See 45 *Ga. App.* 855 (166 S. E. 249). We are thus confronted with the fact that two separate juries have rendered a verdict in favor of the plaintiff and against the claimant; that these verdicts have been approved by the trial judge; that the jury are the exclusive judges of the credibility of witnesses, and the final arbiters on questions of fact; and that this court can not invade the province of the jury or annul their findings on questions of fact if supported by any evidence. Bearing this in mind, we look to the record to see if there was any evidence adduced on this the second trial of the case which would authorize a verdict for the plaintiff in execution and take the case out of the former ruling of this court.

There were some facts established on the trial now under review which, considered in connection with other evidence adduced and the exclusive right of the jury to pass upon the credibility of witnesses, authorized the jury to discredit the claimant's contentions and find in favor of the plaintiff in execution. One of the contentions of plaintiff in execution was that the property was found in possession of the two principal defendants in execution, as shown by the return of the levying officer, and that it remained on the farm with them after the alleged sale to their daughter. The daughter's explanation of this, as shown in the former decision of this court, was "that her mother and father lived with her; that the property had never been moved from the place; that her father continued to work on the farm but not as manager; that since she bought the place she had been running it herself; . . that she takes care of her father and mother on the farm." This explana-

tion is not now applicable. On the second trial, which occurred September 5, 1933, the evidence showed that the parents, defendants in execution, were still in possession of the property, and that the daughter had not lived with them since December 31, 1932, when she married and moved away. The record further shows that the daughter, Mrs. Vivian Scruggs Dixon, testified positively that she borrowed $500 in cash from her brother to pay for the property; that her brother, the claimant, testified that he let her have only $375; and that she went back on the stand and testified that she was mistaken about borrowing $500. The evidence in this respect was in part as follows: By Mrs. Dixon: "I borrowed $500 from my brother, J. B. Scruggs, to finish paying for the property. I secured the loan from him with a bill of sale to secure debt on the personal property. . . J. B. Scruggs turned over to me the $500 in Col. Tuten's office in *cash money,* and I counted it to see that it was $500. It was in bills of different denominations, some five-dollar bills, some ten-dollar bills, and I think there were two fifty-dollar bills. I am *sure* that my brother let me have $500 *in money* in Col. Tuten's office. *I could not be mistaken* about him letting me have that much money. It was not $375 that he let me have instead of $500. *I know that I am not mistaken about this.* . . I have just sworn that I got $500 and that I counted it to see that it was that much. It was $500 that my brother let me have in Col. Tuten's office." J. B. Scruggs, the brother and claimant, testified: "I loaned my sister $375 in money. . . Some time before this trade was made I let my father have $125 to buy a wagon." Mrs. Dixon: "When I testified before dinner about the $500 that I borrowed from my brother in cash in Col. Tuten's office, I was mistaken." The record further shows that on the first trial of this case J. B. Scruggs, the claimant, swore: "The $375 I saved up over a period of time. I did not keep any of it in the bank. I had it all in a pocket-book and kept it there until I saved it up." On the second trial he swore: "I made the money that I let my sister have over a period of three or four years in barber work and farming. I think I have the checks that I drew on the bank at my home." Not only was the claimant's testimony contradictory as to saving the money in a pocket-book and saving it in the bank, but he also swore positively that he did not testify on the former trial that he kept the money in a pocket-

book and not in the bank, and the plaintiff in fi. fa. refuted this by the introduction of his testimony on the former trial. The jury, in passing upon the credibility of the witnesses, certainly had a right to consider these contradictory statements made under oath.

Plaintiff in execution introduced considerable evidence to show that Mrs. B. A. Scruggs and her husband J. E. Scruggs, defendants in execution, were in charge of the property and managing the farm, contrary to the testimony of Mrs. Dixon. G. W. Houston swore: "Mr. Scruggs was looking after the management of the farm on said place. I saw him in charge of this place several times since September 16, 1929 [the date of the alleged sale to the daughter, and when the daughter claimed to have assumed management]. Since that time I have also seen Mr. Scruggs hauling tobacco to market and handling the sales in his *own name*. I have seen this a number of times. I have never seen Mrs. Vivian Scruggs Dixon having anything to do with the sale of any of the products of the farm." The evidence further shows that witness M. L. Odum "asked Mrs. Dixon if she didn't have some mules to sell [mules being part of the personal property levied upon], and she said that she did not, that she had never owned any mules. I then told her that I heard she had bought some mules from her mother, and she said that was all a sham piece of business to keep her father and mother from having to pay a debt they owed." Plaintiff in execution further proved that in the first part of September, 1929 (just before J. B. Scruggs claimed to have loaned his sister $375 to buy the property in question on September 16, 1929), J. B. Scruggs stated that he was "busted" and was endeavoring to borrow $20.

The foregoing, and other evidence, tended to create a doubt as to the bona fides of the transactions between mother, daughter and brother. In *Fouts* v. *Gardner,* 157 *Ga.* 362, 365 (121 S. E. 330), the court said: "There was evidence tending to show that J. H. Fouts remained in possession of the land after he conveyed the land to the claimant, S. L. Fouts. This, if true, *would amount to a badge of fraud;* and the jury should have been instructed that if the evidence showed that the claimant remained in possession after the sale, this would amount to a badge of fraud, and they should scan with care the transaction." (Italics ours.) Under the foregoing ruling of the Supreme Court and the facts of the instant case,

the retention of the property by Mrs. B. A. Scruggs after the alleged sale to her daughter, "would amount to a badge of fraud." If the jury determined that Mrs. Scruggs retained possession of the property after the alleged sale to her daughter, thus creating a badge of fraud, then the conveyance to the daughter should be "scanned closely." *Hicks* v. *Sharp,* 89 *Ga.* 311 (3) (15 S. E. 314). "Fraud may not be presumed, but, being in itself subtle, slight circumstances may be sufficient to carry conviction of its existence." Civil Code (1910), § 4626. In *Bryant* v. *Dickerson,* 19 *Ga. App.* 80, 82 (90 S. E. 1027), the court said: "Where transactions between relatives are under review, slight circumstances are often sufficient to induce belief on the part of a jury that there was fraud or collusion between the parties, and authorize them to find against the claimant and in favor of the plaintiff in fi. fa. A claimant must, generally speaking, come into court with hands unstained by any suggestion of collusion with the defendant in fi. fa. to defeat or defraud the creditors of the latter; and a claimant who fails to make a clear showing of both legal and moral right to the property in dispute must generally suffer the loss thereof at the hands of a jury, if there be any circumstances in proof, even though slight, which may be sufficient to authorize the inference of fraud or collusion." In *Salsbury* v. *McNure,* 30 *Ga. App.* 81 (116 S. E. 666), it was held: "On the trial of a claim case where the issue is the bona fides of a transfer of property by the defendant in execution to the claimant, and there are circumstances which, if not satisfactorily explained, may be regarded as badges of fraud, it is for the jury to pass upon such issues. . . The possession of the defendant in execution after an absolute sale of the property levied on is prima facie evidence of fraud. The sufficiency of the explanation of such possession is for the jury's determination." See also *Dumas* v. *Barnesville Bank,* 36 *Ga. App.* 810 (138 S. E. 243), and cit.

The evidence authorized the verdict; the three special grounds of the motion for a new trial attacking the charge of the court show no cause for a reversal; and the court did not err in overruling the motion for a new trial.

*Judgment affirmed. MacIntyre and Guerry, JJ., concur.*