## 26451. FINCHER *v.* HARLOW.

DECIDED OCTOBER 27, 1937.

*Lawton Nalley,* for plaintiff in error. *Burress & Dillard,* contra.

SUTTON, J. W. W. Fincher filed a claim to an automobile truck

which had been levied on by Amos Harlow pursuant to a judgment which he obtained against G. C. Elliott under date of October 21, 1936. The case was tried before a judge of the municipal court of Atlanta, and judgment was rendered in favor of the plaintiff in execution. Thereafter an appeal was taken to the appellate division of the municipal court, error being assigned on the judgment of the judge of the trial court in overruling the claimant's motion for new trial. The appellate division affirmed the judgment of the trial court, and the exception here is to the judgment of the appellate division of the municipal court.

The facts of the case, as shown by the evidence, are substantially as follows: In July, 1936, G. C. Elliott, son-in-law of the claimant, purchased a truck from East Point Chevrolet Company, under a retention-title contract, for the sum of $175, giving an old truck of the value of $75 as part of the down payment, together with $50 in cash, the balance being $50, payable at the rate of $8.33 per month. Thereafter, on July 27, 1936, while driving the purchased truck, he had a collision between it and an automobile owned and driven by Amos Harlow. On August 13, 1936, Harlow filed suit against Elliott in the municipal court of Atlanta. On August 16, 1936, Elliott made a transfer of the title-retention contract for a purported consideration of $155.97. On October 21, 1936, Harlow obtained judgment against Elliott, and execution issued and was levied on the truck, it being recited in the return of the marshal that it was found in the possession of Elliott. The return was not traversed. Elliott, sworn for the claimant, testified that he lived with W. W. Fincher, his father-in-law, and was in the junk business; that he needed a truck in his business and his father-in-law had purchased one for him to use, renting it to him at one dollar per day; that Fincher knew nothing about trucks and could not drive one; that the truck he had been using was in bad condition, and he requested Fincher to trade it in at the automobile agency; that this was done, and title was taken in the name of Elliott; that the claimant went with him, but stayed outside while Elliott went in the place of business and made the trade; that he was allowed $75 for the old truck, and Fincher gave him $50 to pay on the purchase-price, leaving a balance due of $50; that he made all the payments thereafter, but the money was furnished by Fincher; that he was at all times indebted to Fincher; that Fincher

did not owe him $155.97 recited in the transfer as consideration; that there were repairs of $38.75 at one time and $5.63 at another time; and that Fincher furnished the money for the repairs. The claimant testified that he could not drive a truck, but owned one which he rented to Elliott; that Elliott was in the junk business, and from surrounding territory bought junk and brought it to Atlanta and sold it; that he (the claimant) could not drive an automobile and knew nothing about one; that he rented the truck to Elliott at one dollar per day; that he formerly had a truck which was expensive to maintain, and he had Elliott to trade it in on July 15, 1936, going with Elliott to the automobile agency but remaining outside; that he furnished the old truck for a credit of $75 on the truck purchased at that time, as well as $50 as part of the down payment, and that he gave Elliott the money with which to make the deferred payments totaling $50. When asked why the consideration of $155.97 was shown in the transfer, he testified that Elliott did not pay him anything; that Elliott owed him money; that he owed Elliott nothing; that at the time of the transfer $155.97 had not been paid on the truck; that the former truck had been turned in for a credit of $75; and that $15 had been paid. There was introduced in evidence the suit filed by Harlow in the municipal court of Atlanta, showing the date of filing as August 13, 1936, and that service was made on Elliott, the defendant, on the same day at the residence in which Elliott resided with Fincher, his father-in-law.

It is contended by the plaintiff in error that the uncontradicted testimony of the claimant and Elliott can not be arbitrarily disregarded, and that it shows conclusively that title to the truck in question is in the claimant. The defendant in error contends that there were circumstances which authorized the trial judge to discredit the testimony and to find that the title is properly in Elliott. "In *Laramore* v. *Minish*, 43 *Ga.* 282, Chief Justice Lochrane, in discussing the act making parties competent witnesses, said: 'We think, under a proper construction of this law, that witnesses introduced under its provisions are lifted out of the general rule, and that the jury may exercise their *judgment* on the credit of such witnesses from the *fact of their interest*, irrespective of other impeachment or attack.' Only two Judges presided in that case; but in *Penny* v. *Vincent*, 49 *Ga.* 473, which

was decided by a full bench, what was said by Chief Justice Lochrane in *Laramore* v. *Minish* was approvingly quoted, and it was held that under the act of 1866 juries have a larger discretion as to the credit which they will give parties testifying than in the case of witnesses testifying who are not parties. Trippe, J., delivering the opinion, said: 'With all this power, a jury should not capriciously discredit a witness or reject his testimony; but if there be in evidence any circumstances or facts in conflict with the testimony of a party to the suit, . . and the point·be directly made to the jury as to what credit shall be given to his testimony, and they deliberately decide to reject it, and the judge trying the case, who, with the jury, both see and hear the party testify, refuses to interfere, we do not think a case is made to demand our intervention.'" *Armstrong* v. *Ballew*, 118 *Ga.* 168, 170 (44 S. E. 996). The rule that the uncontradicted testimony of unimpeached witnesses can not lawfully be arbitrarily disregarded "does not mean that the jury are obliged to believe testimony which under the facts and circumstances disclosed they in fact discredit, but means that they are to consider the testimony of every witness who is sworn, and not arbitrarily disregard the testimony of any witness." *Wilson* v. *Gray*, 34 *Ga. App.* 320 (129 S. E. 297). The son-in-law Elliott was an interested witness. "The interest of a witness in the result of the suit may always be considered in passing upon his credibility; and where there are circumstances inconsistent with the truth of his testimony, the jury are not obliged to believe him, even though he is not contradicted by any other witness." *Detwiler* v. *Cox*, 120 *Ga.* 638 (48 S. E. 142). It is fundamental that transactions between near relatives are to be scanned with care. Fraud is subtle, and slight circumstances are sufficient to show it, especially in family transactions. *Woodruff* v. *Wilkinson*, 73 *Ga.* 115 (3); *Cowan* v. *Bank of Rockdale*, 159 *Ga.* 123, 125 (125 S. E. 194); *McLendon* v. *Reynolds Grocery Co.*, 160 *Ga.* 763 (5) (129 S. E. 65). As was said in *Salsbury* v. *McNure*, 30 *Ga. App.* 81 (3) (116 S. E. 666): "'A claim case is in the nature of an equitable proceeding; and where transactions between relatives are under review, slight circumstances are often sufficient to induce belief on the part of a jury that there was fraud or collusion between the parties, and authorize them to find against the claimant and in favor

of the plaintiff in fi. fa.' *Bryant* v. *Dickerson,* 19 *Ga. App.* 80, 82 (90 S. E. 1027)." See also *Scruggs* v. *Blackshear Manufacturing Co.,* 49 *Ga. App.* 205 (174 S. E. 732). But "It is true that the principle that a conveyance between relatives is to be scanned closely is not applicable until badges of fraud, other than relationship, are proved." *Stephens* v. *Stephens,* 168 *Ga.* 630, 645 (148 S. E. 522). In claim cases possession of property after sale is a badge of fraud. *Carter* v. *Stanfield,* 8 *Ga.* 49; *Kelley* v. *Stovall,* 138 *Ga.* 186 (75 S. E. 6); *Stephens* v. *Southern Cotton Oil Co.,* 147 *Ga.* 410 (2) (94 S. E. 245); *Salsbury* v. *McNure,* supra. The badge is, however, only prima facie and may be explained, the sufficiency of the explanation being for the jury, as is shown in the cited cases and others.

Applying to the present case the principles of law above set forth, we think that the judge who tried the case without a jury was authorized to discredit the testimony of the claimant and the defendant in fi. fa., and to find that the latter was the real owner of the truck. If their testimony is to be believed, the transfer was merely to put paper title in the claimant, who, it is contended by them, paid the full purchase-price of the truck, and who allowed the defendant in fi. fa. to retain possession merely because he was using the truck on a rental basis. But if this be so, how can the transfer with a recital of $155.97 be reconciled? That is sought to be explained by the son-in-law by saying that the transfer was prepared by the automobile salesman who sold the truck in the outset, and that presumably, but without instructions, he used that figure after taking the purchase-price of $175 and deducting therefrom the sum of $19.03 which was furnished by the claimant as expense money in constructing a body for the truck. That may be true; and it may also be true that no actual consideration passed between the claimant and the son-in-law; but the sufficiency of the explanation as to the transfer and the possession thereafter was for the judge who tried the case without a jury. He might quite properly have concluded that the original plan of the claimant and Elliott was to arrange a fictitious transfer so as to give it the appearance of an actual purchase and sale, but later, fearing that it might be attacked as a fraudulent conveyance in an action to set it aside, there was concocted in concert the idea of setting up that the claimant had really been the owner

all the while. Another element is that the claimant, at the time the truck was purchased with money which he claims to have been his own, was content to remain outside and show no interest whatever in what he was to receive. It is true that he might have placed full confidence in the son-in-law to make a wise selection, but, in connection with the other circumstances, it is an earmark which goes to the bona fides of the transaction, and which might have properly influenced the judge in discrediting the testimony. At least, it was for the judge to determine whether or not the badge of fraud had been satisfactorily explained, and, having the parties before him and observing their demeanor on the stand, we can not say that he erred. Accordingly, the judgment of the appellate division of the municipal court in affirming his judgment overruling the motion for new trial will not be disturbed.

*Judgment affirmed. Stephens, P. J., and Felton, J., concur.*