28356. McDAY et al. v. LONG.

DECIDED OCTOBER 28, 1940.

*O'Glen Ray,* for plaintiffs in error.   *A. T. Walden,* contra.

PER CURIAM.   On October 9, 1939, Jessie Mae Long brought a bail-trover proceeding against Ada McDay for a described Oldsmobile sedan.   The defendant gave bond and retained possession of the property.   On November 3, 1939, the defendant filed an answer denying the allegations of the petition, and setting up that she did not claim title to the automobile but claimed the right to possession through her mother, Mary Calhoun, who had made a loan to Geraldine Pierce, alleged rightful owner of the automobile, Mary Calhoun holding the automobile under a bill of sale given by Geraldine Pierce to secure a loan.   On the same day Mary Calhoun and Geraldine Pierce filed an intervention setting up that Geraldine Pierce owned the automobile by virtue of a bill of sale executed and delivered by J. B. Long, husband of the plaintiff in the bail-trover proceeding, in consideration of services which she had rendered to him, and that Mary Calhoun was holding the automobile as security for a loan which she had made to Geraldine Pierce.   On November 24, 1939, Jessie Mae Long filed an answer to the intervention, denying the substantial allegations, and setting up that the act of the intervenors was a mere fraudulent scheme to secure possession and ownership of the property, and that none of the instruments under which either claimed was bona fide and genuine, but merely a scheme and device which originated in the mind of the defendant in the bail-trover proceeding.

By agreement of the parties the main trover action and the intervention were tried together before a judge of the civil court of Fulton County, without the aid of a jury, the evidence being substantially as follows:   It was stipulated between the parties that the legal title to the automobile was vested in J. B. Long at the time of his death, unless he had transferred it to Geraldine

Pierce, and that it was among other things set apart as a year's support for his wife, the plaintiff in the bail-trover action, although the defendant in that action and the intervenors denied the legality of the setting apart of the automobile in the year's-support proceeding, contending that Long transferred ownership to Geraldine Pierce on July 29, 1939, before his death in August, 1939. Demand was made before the bail-trover proceeding was brought. Clarence Bell testified for the plaintiff, without objection, that in his opinion the automobile in question was worth not less than $400.

Geraldine Pierce testified for the defendant and the intervenors, that she was a practical nurse and was employed by J. B. Long as his secretary before he was taken to his bed with tuberculosis and was unable to work; that she nursed him through a long illness between the spring of 1938 and his death in August, 1939; that he was a bed patient, requiring constant care and being very ill; that she did all the work necessary to wait on and care for him; that he did not have the money to pay her for many months in the end, and made a will bequeathing to her his automobile and other things; that about a week before his death he said he wanted to pay her for her services and wanted to make sure that she got the automobile; that he had a bill of sale prepared and signed it in the presence of two witnesses and turned it over to her on July 29, 1939, a few days before his death; that Betty Lane and Sarah White were witnesses to the bill of sale; that Long's wife did nothing for him during his last illness, and visited him only once for a few minutes just a few days before his death; and that the witness performed services for him, and did not receive payment because Long did not have the money with which to pay her, and he paid her by transferring the automobile to her.

Mary Calhoun testified for the defendant and the intervenors, that she was the mother of Ada McDay and was sixty-six years of age; that she lent $125 to Geraldine Pierce, and took a bill of sale on her automobile, an Oldsmobile sedan, to secure the loan, and turned the money over to her through the witness's daughter, Ada McDay, a few weeks before J. B. Long died; that she could not drive an automobile, and her daughter, Ada McDay, was keeping it for her until she could get her money back; that she owned three houses, and one of them was clear; that she had saved some money which she got from the death of her two boys ten or twelve years

ago; and that when she got her money back she would give Geraldine Pierce the car. On cross-examination she testified that after the death of J. B. Long she turned over $125 to a man at the court-house and got the security which was given by Geraldine Pierce; that she did not lend the money but once, and that was after Long's death and burial; that she did not know the man to whom she delivered the money at the court-house, and did not know whether or not Geraldine Pierce got the money.

Ada B. McDay testified for the defendant and intervenors, that she was the daughter of Mary Calhoun; that her mother was old and sick and her memory very poor; that the money her mother testified about, as having been given to a man at the court-house, was not the loan on the automobile, but was a small fee which she paid to the bondsmen who signed the trover bond on the automobile; that the witness did not claim to own the automobile, but has been keeping it for her mother and driving it because her mother is not able to drive an automobile; that the witness has been convicted of lottery; that all of the witnesses on the agreement and will of J. B. Long signed in the presence of each other and in the presence of J. B. Long; that he signed in the presence of the witnesses; and that in her opinion the automobile in question is not worth more than $250.

Sarah White testified for the defendant and intervenors, that she was called to the bedside of J. B. Long on July 29, 1939; that Rosa Belle Jackson was with her; that J. B. Long asked them to be witnesses to a bill of sale, submitted to her on the stand; that she signed the same as a witness after J. B. Long signed it; that he read it and said that he was paying Geraldine Pierce for nursing him, by transferring his automobile to her by the bill of sale; that Geraldine Pierce paid one dollar to Long; that she also signed the paper entitled "Agreement and Will;" that Long read and signed the paper in her presence and in the presence of all of the others whose names appear thereon; that they were all together, and all whose names appear signed the instrument at the same time; that J. B. Long signed first; that he read the paper to them before he signed it, and asked them to be witnesses to it; and that the witness is a neighbor and friend of Geraldine Pierce.

H. E. Nash testified for the defendant and intervenors, that he was a practicing physician, had special training in the treatment

of tuberculosis, and had done general practice; that he treated J. B. Long for tuberculosis during his last illness; that Geraldine Pierce was his nurse and did an excellent job, and, in the opinion of the witness, prolonged his life six or eight months by her good work, but the case was hopeless, and the patient died in August, 1939; that the witness visited him on July 29, 1939, and was sure of the date; and that Long was then very ill, but perfectly clear mentally.

Rosa Belle Jackson testified for the defendant and intervenors, that she signed as a witness on the bill of sale from J. B. Long to Geraldine Pierce; that Long read the paper and told her and Sarah White that he was giving Geraldine Pierce his automobile as payment for nursing him through his illness; that Geraldine Pierce gave him one dollar, and the witness saw her do so; that she and Sarah White signed the paper after Long had read it and signed it; that she also signed as a witness the instrument entitled "Agreement and Will;" that Long signed it first; that he read the paper to all whose names appear thereon, and all signed at the same time on December 5, 1938.

Lillian Hampton testified for the defendant and intervenors, that she signed as a witness the bill of sale from Geraldine Pierce to Mary Calhoun; that Geraldine Pierce signed it in the presence of the witness and Betty Lane; that the automobile was not worth more than $150 to $200 at the most; that the reason she asked about a notary witnessing the paper alleged to have been signed by Long as an agreement and will was because her sister, Geraldine Pierce, requested her to find out about it; that she did not at that time have with her the paper, and did not know whether or not a notary's name was on it when she was talking to E. R. Pruden; and that she was not trying to get a paper notarized after the death of the person who was supposed to have executed it.

Betty Lane testified for the defendant and intervenors, that she was a witness to the paper executed by Geraldine Pierce to Mary Calhoun, a bill of sale to guarantee the payment of $125; that Geraldine Pierce signed it, and the witness and Lillian Hampton were witnesses. She identified her signature to the "agreement and will," and testified that J. B. Long and all whose names were on it signed at the same time, and that all signed in the presence of one another.

The defendant and intervenors offered in evidence the following: An instrument dated July 29, 1939, purporting to have been signed by J. B. Long, showing as witnesses the names of Sarah White and Rosa Belle Jackson, and transferring to Geraldine Pierce title to the automobile here involved, in consideration of one dollar in hand paid and personal service rendered as nurse and secretary by Geraldine Pierce up to July 29, 1939. A bill of sale, dated August 20, 1939, signed by Geraldine Pierce, reciting that she had sold to Mary Calhoun all her title and interest to the automobile here involved, for $125, the names of Lillian Hampton and Betty Lane appearing as witnesses. An instrument headed "Agreement and Will," purporting to have been executed by J. B. Long, dated December 5, 1938, and reciting that in consideration of the faithful services rendered by Geraldine L. Pierce as nurse and secretary during his illness, and in the absence of any definite named amount of compensation therefor, and for one dollar paid to him by her, he does by such instrument will and bequeath to her the automobile here involved and all his other personal effects which may be now or hereafter in her possession in the event of his death, and bequeathing to his wife, Jessie Mae Long, five dollars. His signature purported to have been witnessed by Ada B. McDay as notary public. Below the signature appeared the following: "I agree to continue to serve J. B. Long in the capacity of nurse and secretary during the entire siege of his illness, whatever the termination shall be, for the consideration named in the paragraphs of the above agreement. We, the undersigned, Sarah White, Betty Lane, and Rosa Belle Jackson, witnessed both signatures." After the word "Signed" appeared the name Geraldine L. Pierce, below which appeared the names of Sarah White, Betty Lane, and Rosa Belle Jackson as witnesses, and to the left of all of the names appeared that of Ada B. McDay, notary public, with seal. This paper was recorded in the office of the clerk of the superior court of Fulton County, on August 11, 1939, in book 2068, page 396.

R. E. Pruden testified for the plaintiff, in rebuttal that she worked for A. T. Walden, counsel for the plaintiff, and was not a lawyer but a notary public; that after the death of J. B. Long Lillian Hampton telephoned to her at night and asked if she could witness a will for her sister, Geraldine Pierce, stating that her sister had asked her to call the witness; that the witness inquired

as to the nature of the paper, and upon being informed that it was a will stated that a will did not require a notary; that Lillian Hampton then said that it was a will and bill of sale combined, between Long and her sister, and the witness informed her that she could not witness Long's signature after his death, but could verify and attest the signatures of the other witnesses if she would bring them by the office; that she was to bring them the following morning, but failed to do so, and a day or so later telephoned and said that her sister had decided not to bother about the paper but to just let the matter work itself out; that Ada McDay came to the office when her employer was out of the city, and wanted him to know that she had J. B. Long's car because she had loaned Geraldine Pierce $175 on it back in February, when she got a little money from the death of a relative, and after her lawyer had investigated and found that the car belonged to Geraldine Pierce and she had a right to borrow on it; that she stated that she did not want the car, because she had one already, and she would be glad to turn it over to anybody who would pay her the money due, either Jessie Mae Long or Geraldine Pierce.

Lillian Hampton, recalled by the defendant and intervenors, testified, that she did not have any paper before her when she talked to R. E. Pruden over the telephone; that she was asking for information, and her sister had the paper; that some time later she saw the paper and saw that it did not need a notary public to sign it; that the "agreement and will" was the paper she had in mind when talking to R. E. Pruden; and that she later called R. E. Pruden and told her that any witnessing by a notary public was unnecessary, and that she could forget about the matter.

Jessie Mae Long testified, that she was the widow of J. B. Long; that he left her and stayed with Geraldine Pierce a long time before he became sick four years ago; that the witness did not go about them, but she told them that she would not have the automobile, but if she could win it in court she would sell it and never get in it, as she did not want the car that Geraldine Pierce had been in; that she went to see her husband one time because she was called shortly before his death; that she stayed about fifteen minutes, as she did not wish to stay any longer, and it was not necessary for her to do so; that Ada McDay came to her and asked about some furniture which J. B. Long was supposed to have

bought and which Geraldine Pierce had paid for, but made no mention whatever of the automobile.

Upon conclusion of the evidence the court rendered judgment against Ada McDay for $250 (as the plaintiff had elected to take a money verdict), and disallowed the claims of the intervenors. The defendant and the intervenors moved for a new trial, and they excepted to the overruling of that motion.

█ There is confessedly no title in the automobile in Ada McDay. Jessie Mae Long, the plaintiff, and Geraldine Pierce and Mary Calhoun, the two intervenors, occupied in this case the relation of plaintiffs in trover, with conflicting claims of title to the property involved. Only one can have title to this property, and must recover, if she recovers at all, on the strength of her own title. It appears from the undisputed evidence that J. B. Long, the husband of the plaintiff, Jessie Mae Long, under whom she claims title to the property by virtue of having had set apart to her a year's support, owned the automobile before his death, and by a bill of sale, executed before his death, conveyed the title to the automobile and delivered it for a valuable consideration to Geraldine Pierce, one of the intervenors. The title to this automobile passed to Geraldine Pierce by this bill of sale, irrespective of the fact that the bill of sale was never recorded. It is immaterial whether or not this bill of sale was executed in the presence of witnesses. The execution by the maker of a bill of sale before witnesses, or the record of a bill of sale, is immaterial to its validity as an instrument passing title to the property described therein. These requirements are essential only for the purpose of imparting notice to others as to the execution of the bill of sale.

Subsequently to the sale and delivery of the automobile to Geraldine Pierce, the acts of her, Mary Calhoun, and Ada McDay, which related to the "agreement and will" alleged to have been made by J. B. Long and the alleged bill of sale by Geraldine Pierce to Mary Calhoun and the acquisition of the possession of the automobile by Ada McDay, are immaterial in so far as respects the title acquired by Geraldine Pierce from J. B. Long, and are immaterial in so far as the determination of the right of the plaintiff in trover to the automobile is concerned. The court found against the claim of title of both intervenors, Geraldine Pierce and Mary Calhoun. They are plaintiffs in error in the bill of exceptions; and the

question is whether the evidence demands a finding that either one of these intervenors had title to the property. It appears from the evidence that Geraldine Pierce conveyed to Mary Calhoun her title to the property to secure a loan of money. Geraldine Pierce herself concedes that she executed the bill of sale to Mary Calhoun to secure this indebtedness. This conclusion is an admission in judicio by Geraldine Pierce against her title to the property. The evidence demands a finding against the claim of Geraldine Pierce. It appears from the undisputed evidence that the title to the property as security for a debt was in Mary Calhoun, one of the intervenors, and that the defendant in trover, Ada McDay, had possession of the property as custodian for Mary Calhoun. The above facts stand out undisputed from the evidence and the unimpeached testimony of Geraldine Pierce. It is therefore immaterial whether the testimony of the other witnesses as to the execution of the various papers and the signatures of the witnesses thereon was conflicting, or that the testimony of any of these witnesses was in any way impeached. The evidence was insufficient to authorize the judge to find that the title to the automobile was in the plaintiff, Jessie Mae Long, but demanded a finding that the legal title was in Mary Calhoun, as security for a debt of Geraldine Pierce. The court erred in finding for the plaintiff, Jessie Mae Long, and in overruling the motion for new trial, made by the defendant, Ada McDay, and the intervenors.

■ The special grounds of the motion for new trial have been carefully examined, but are without merit, and any detailed discussion is deemed unnecessary.

*Judgment reversed. Stephens, P. J., and Felton, J., concur.*

SUTTON, J., dissenting. I concede, of course, that if the purported bill of sale to Geraldine Pierce was genuine it passed title to her without any recordation, and that if she became the legal holder of the title to the automobile she could convey title to Mary Calhoun as security for a loan. However, I am of the opinion that, for reasons stated below, the judge was fully authorized to discredit the witnesses for the defendant in trover and the intervenors, and to find that neither the purported "agreement and will" nor the bill of sale from J. B. Long, the deceased husband of the plaintiff in trover, was ever executed by him. Of course the so-called "agreement and will" alleged to have been

executed by J. B. Long was insufficient to convey to Geraldine Pierce the title to the automobile here involved. It lacks the essentials of a properly executed and witnessed will, and fails also as a bill of sale, for the reason that it did not purport to pass title in præsenti to Geraldine Pierce. In fact it is not now relied on by the plaintiffs in error as a muniment of title. It was, however, introduced in evidence, and, as hereinafter shown, is of importance in the consideration of the testimony of witnesses for the defendant and the two intervenors. It is contended by the plaintiffs in error that the witnesses produced by them testified to the execution of the "agreement and will" and the bill of sale from Long to Geraldine Pierce, and that they were unimpeached; and that as no circumstantial evidence in the case is inconsistent therewith, such testimony can not be disregarded, and is conclusive on the question of her having acquired title to the automobile which it is alleged she subsequently conveyed to Mary Calhoun as security for a loan. Let the record now be examined.

If Geraldine Pierce in good faith relied on the alleged bill of sale of July 29, 1939, why did she not put it on record just as she did the "agreement and will" upon which she does not now predicate any claim of title? If, as she contends, the "agreement and will," though recognized as insufficient as a will or as an in præsenti transfer of title to the automobile in question, was executed and witnessed by several, including Ada McDay, the defendant in trover, as a notary public, why did she instruct Lillian Hampton, her sister, to inquire of a notary public in the office of counsel for the plaintiff in the bail-trover proceeding, after the death of Long, if she, the notary public, would witness a will in her official capacity? She does not dispute the testimony of her sister in this respect; and although the latter stated, when recalled to the stand, that she did not have any paper before her, and that it was in the possession of Geraldine Pierce, there was no offer on the part of Geraldine Pierce to show that she was interested in having a notary public attest any will other than the purported one from Long. Furthermore, it was testified by Lillian Hampton that the paper she had in mind was the "agreement and will," and that she later saw it and found that no signature of a notary public was necessary, and advised the notary public she had inquired of that she could forget about the matter. She had been informed that this

notary public would attest the signatures of the subscribing witnesses, and she had stated that she would bring them before her on the following morning, but she failed to do so. Nevertheless the instrument, as offered in evidence, shows a purported attestation by another notary public, the defendant in the bail-trover action, as to all of the signatures on the document. The question naturally arises: After R. E. Pruden, the notary public in the office of counsel for the plaintiff, had expressed an unwillingness to attest the signature of a dead man, and the person delegated by Geraldine Pierce, her sister, had stated that she would bring the subscribing witnesses before this notary public, but failed to do so, would not the fact that the name of another notary public, who is the defendant in the bail-trover action, now appears as attesting the signatures of Long and the subscribing witnesses authorize the conclusion that these signatures were not on the paper before the death of Long? I think that the trial judge, having the opportunity to observe the witnesses and their demeanor on the stand, was authorized to so conclude. They testified, it is true, that they saw Long sign the paper, after stating his reasons for wishing to execute it; and it is contended by the plaintiffs in error that they were not impeached and can not be discredited. But "The rule that the uncontradicted testimony of unimpeached witnesses can not lawfully be arbitrarily disregarded 'does not mean that the jury are obliged to believe testimony which under the facts and circumstances disclosed they in fact discredit, but means that they are to consider the testimony of every witness who is sworn, and not arbitrarily disregard the testimony of any witness.'" *Fincher* v. *Harlow,* 56 *Ga. App.* 578 (193 S. E. 452) ; *McRae* v. *Wilby,* 59 *Ga. App.* 401, 410 (1 S. E. 2d, 77) ; *Caldwell* v. *Caldwell,* 59 *Ga. App.* 637, 643 (1 S. E. 2d, 764). A fact can be proved by circumstantial evidence as well as by direct proof, and physical facts and circumstances may be sufficient to authorize the jury to disbelieve the witnesses of a party and to thereby impeach them. *Atlantic & Birmingham Railway Co.* v. *Clute,* 3 *Ga. App.* 508 (60 S. E. 277) ; *Emory University* v. *Bliss,* 35 *Ga. App.* 752 (134 S. E. 637) ; *Central of Georgia Ry. Co.* v. *Grace,* 46 *Ga. App.* 101, 102 (166 S. E. 684). "Implications inconsistent with the testimony may arise from the proved facts; and in still other ways the question of what is the truth may remain as an issue of fact despite

uncontradicted evidence in regard thereto." *Cooper* v. *Lumbermen's Mutual Casualty Co.*, 179 *Ga.* 256, 261 (175 S. E. 577). The alleged subscribing witnesses testified that all of the persons whose names appear on the instrument were actually present, not excepting Ada McDay, the defendant in the trover action and the purported attesting notary public, but if, as the trial judge might conclude for reasons above shown, that her attestation was not made before the death of Long, it would necessarily follow that the testimony of these witnesses that she was present and signed with the others was false, and if they testified falsely in that respect the judge was also authorized to find that their testimony was likewise false in respect to having witnessed Long's purported signature. It is significant that two of the alleged witnesses to this instrument, Sarah White and Rosa Belle Jackson, were shown as witnesses to the purported bill of sale of July 29, 1939; and if, for reasons above shown, the judge was authorized to discredit them in respect to the "agreement and will," he was further authorized to reject as untrue their testimony in regard to witnessing the alleged execution of the bill of sale by Long under date of July 29, 1939. Obviously if Geraldine Pierce received no bona fide bill of sale from Long, she had no title to convey to Mary Calhoun, as she claims it only from that source, and the judge was authorized to find against the contentions of the two intervenors. It was stipulated between the parties that unless the title to the automobile, the subject-matter of the trover suit, had been transferred to Geraldine Pierce before his death the ownership was in Long. The judge being authorized to find that she never received any bona fide transfer of title, the property, under such stipulation, must be considered as belonging to Long at the time of his death; and having been admittedly set apart as a year's support for his widow, the present bail-trover action was properly maintainable by her. There being evidence that the automobile was worth not less than $400, and the plaintiff having elected to take a money verdict, the judgment rendered by the trial judge in her favor for $250 was fully authorized.

In holding that the judge was authorized to find that the "agreement and will" and alleged bill of sale from Long to Geraldine Pierce were spurious and fraudulent, I am not unmindful of the fact that she testified that she was present at the time of the execu-

tion of the "agreement and will" and the bill of sale, and that Ada McDay testified that she was present at the execution of the "agreement and will" and attested the signatures thereon. However, it was shown that Geraldine Pierce had been living with Long, a married man, several years before he became ill from tuberculosis, and that Ada McDay, the defendant in the trover action, was the daughter of Mary Calhoun, claimant, and had been convicted of a lottery. In these circumstances, and having the witnesses before him and observing their demeanor on the stand, he was not obliged to believe them, especially as they both were interested in the outcome of the suit.