### 28323.   LAWHON *et al. v.* HENSHAW.

DECIDED NOVEMBER 22, 1940.

*James A. Branch, Thomas B. Branch Jr.,* for plaintiff in error. *Spalding, Sibley, Troutman & Brock, Harvey Hill,* contra.

MACINTYRE, J.   Marsh Henshaw sued Ragsdale-Lawhon-Weill

Company, a partnership, to recover $625 on a draft given as the purchase-price of three mules. The judge, trying the case without a jury, found in favor of the plaintiff. The motion for new trial is based solely on the general grounds. The only question to be determined is whether there was any evidence to prove that Roy Tapp was acting as agent for the defendant at the time of the sale of the mules and the execution of the draft here sued on.

The plaintiff testified that about the middle of October, 1937, Tapp came to him in Kentucky and stated that he was the agent of Ragsdale-Lawhon-Weill Company (hereinafter referred to as the defendant) to buy mules, and bought twenty-three mules and gave him a draft for $3840 on the defendant, which draft was on a printed form headed: "Ragsdale-Lawhon-Weill Co., Live-Stock Commission Merchants, Atlanta, Ga." This draft was paid upon presentation. About a month and a half thereafter, on November 30, 1937, Tapp again came to the plaintiff's place of business and stated he needed three mules to fill out a car, and gave him a like draft on the defendant, except that it was for $625 for three mules. Henshaw turned the mules over, as he understood it, to Tapp as agent of the defendant. Payment was refused on this draft. Powell, who lived in Kentucky, testified that he and Tapp came to Atlanta on or about the last of November, 1937, and that "Mr. McClure, the [defendant's] bookkeeper, . . gave him [Tapp] a check book or draft book, or something of that kind, and some tin tags to tag [the mules] in the tails, like they do a lot of times when they ship them. . . When we were fixing to come home . . we walked down the street together, and he [Mr. Ragsdale, a member of the defendant company, a partnership] put his arm around Roy [Tapp] and said, 'Roy don't buy all the best, but buy what you think you can make money on.'" Other evidence showed that the mules in both cars were delivered to the defendant at its place of business. The declarations of Tapp, who was assuming to act as agent for the defendant company, to the plaintiff would not by themselves be admissible to prove agency; yet when such declarations of the agent are "accompanied by other evidence as to the conduct of the person in the character of agent, and acceptance by the alleged principal of the fruits of the agency, such declarations are admissible in evidence." *Weiner Brothers Co.* v. *Tucker*, 139 *Ga.* 596 (77 S. E. 811); *Scott* v. *Kelly-Springfield Tire Co.*,

33 *Ga. App.* 297, 298 (125 S. E. 773) ; *Render* v. *Hill,* 30 *Ga. App.* 239 (117 S. E. 258) ; *Palmer-Murphey Co.* v. *Fruit Haven Farm,* 34 *Ga. App.* 153 (128 S. E. 693) ; *Rome Insurance Co.* v. *Thomas,* 11 *Ga. App.* 539, 541 (75 S. E. 894).

Roy L. Tapp, the alleged agent, testified on direct examination: "I have had a connection with Ragsdale-Lawhon-Weill Company. I bought some mules for them is what I shipped. I handled some mules before I bought mules for them. Mr. Ragsdale gave me authority to buy them for him. That firm furnished me with drafts and other identifications for their firm, with which to buy mules. Some of the other identification items were this bank draft and tin tags to put in these mules' tails with numbers. Their book-keeper gave them to me. McClure I think is the name. Mac is what they call him. I talked to Mr. Ragsdale two or three different times. He told me to buy them as cheap as I could, and not try to buy all the best. He said if I could buy anything to make money, to do it. They were supposed to pay for them. They furnished me with drafts for payment. He told me to buy these mules as cheap as I could, and not to try to buy all the best. He said to buy anything that looked like it would make money. . . On November 30, 1937, I purchased three mules for Ragsdale-Lawhon-Weill Company from Mr. Henshaw. I lacked three mules of having a full car, and I bought these three to fill out the car with. I gave him a draft on Ragsdale-Lawhon-Weill Company for $625."

The defendant contends in its brief that the following testimony brought out on cross-examination shows that the facts that Tapp related showed that his conclusion that he was the defendant company's agent was erroneous, and that he actually was not such agent. This testimony of Tapp on cross-examination was as follows (we quote from the record) : "I thought I had a right to say whether the mules would be sold at all or not, but I didn't. . . I thought I had a right to say at what price these mules should be sold, but I didn't have every time. . . I told him lots of times, 'Don't sell that mule.' . . The only member of the partnership that I talked to was Mr. Cliff Ragsdale [a partner in the defendant company]. I worked on commission. He said he would take a commission for selling these mules and the profits they could get, I could have that [as my commission]. The commission he was

taking out was whatever they charged there on the sale of mules. I don't know how much it is. And then the difference between the [defendant company's] commission and what I paid [as their agent with their money] for the mules was my profit [commission]. And if the mule was sold, if I paid up in Kentucky $170 [as their agent with their money] for a mule, and that mule sold down here for $190 after they took out the [company's] commission, the balance, that was my money [commission]. That was the trade we had. I knew that. They didn't pay me any salary at all. I thought I was buying them for him. He told me that I was to buy mules for him. He told me that the day that Mr. Vestin Powell was down here. . . He never did pay me any money, expense money. The only money I ever got, if that is what you are getting at, was one $10, I think the second, first or second, load I brought down, I don't know which. That was simply drawn against the mules. I expected to make that out of the sales."

We think the jury were authorized to interpret the testimony of Tapp on cross-examination as shown by the language in brackets inserted. Merely because "'a witness testifies to facts incoherently or inconsistently, that circumstance goes to his credit,' . . but . . does not authorize the court to hold, as a matter of law, that the testimony of one not a party has no probative value merely because it is incoherent, inconsistent, or self-contradictory." *Reaves* v. *Columbus Electric &c. Co.,* 32 *Ga. App.* 140 (3) (122 S. E. 824). On the contrary, "A jury in arriving at a conclusion upon disputed issues of fact may believe a part of the testimony of a witness or witnesses, and reject another part thereof, it being their duty to ascertain the truth of the case from the opinion they entertain of all the evidence submitted for their consideration." *Sappington* v. *Bell,* and *Reaves* v. *Columbus Electric &c. Co.,* supra. We do not think that the testimony of Tapp on cross-examination disproved the case as made out by his direct testimony and the testimony of other witnesses and by certain documentary evidence. We conclude that it should not be held as a matter of law that Tapp was not the agent of the defendant company, but that the question was one of fact for the trial judge. *Reaves* v. *Columbus Electric &c. Co.,* supra. *Judgment affirmed. Gardner, J., concurs.*

BROYLES, C. J., dissenting. I do not think that the verdict was authorized by the evidence. While the witness Tapp testified that

he bought the mules for the defendant company, other testimony elicited from him on cross-examination negatived his conclusion that he was acting as the agent of the company when he purchased the mules, and the testimony of all three members of the company showed that Tapp had never been their agent in buying mules for them and had no authority to buy the mules in question.