36410. BENNETT *v.* TAYLOR *et al.*

Decided January 11, 1957.

*Larry E. Pedrick, Bennett, Pedrick & Bennett,* for plaintiff in error.

*Gibson & Maddox,* contra.

QUILLIAN, J. The respondent having abandoned his general grounds and all but one of the special grounds, we will consider only special ground 4 of the motion for new trial. This ground insists that the trial judge erred in charging the jury: "Where actual possession has been had under a claim of right for more than seven years, such claim shall be respected and the line so marked as not to interfere with such possession. Actual possession of lands, as defined by the law, is evidenced by enclosure, cultivation, or any use and occupation thereof, which is so notorious as to attract the attention of every adverse claimant, and so exclusive as to prevent actual occupation by another. In order for such possession to be respected by the processioners and the line so marked as not to interfere with it, such possession must be actual at the time the processioning is had, and must have been under a claim of right for more than seven years."

There was evidence from which it could be inferred that the protestants and their predecessor in title had been in adverse possession up to the disputed line for more than thirty years before the processioning proceedings were instituted. The respondent, Mr. Bennett, and Aaron Johnson testified that about the year 1935 the respondent had an agreement with the protestants' predecessor in title that the line contended by the protestants would not be the dividing line but would be merely used as the line up to which each would work. The verity and weight of this testimony was for the jury. Code § 38-1805; *Scott & King* v. *Ayers,* 66 *Ga.* 254; *Blood* v. *State,* 24 *Ga. App.* 344 (100 S. E. 761);

*Metropolitan Life Ins. Co.* v. *Joye,* 77 *Ga. App.* 357, 363 (48 S. E. 2d 751). The jury could have accepted a part of the testimony of these witnesses as true and rejected the remainder of it as false. " 'A jury in arriving at a conclusion upon disputed issues of fact may believe a part of the testimony of a witness or witnesses, and reject another part thereof, it being their duty to ascertain the truth of the case from the opinion they entertain of all the evidence submitted for their consideration.' *Sappington* v. *Bell,* 115 *Ga.* 856 (42 S. E. 233). See *Evans* v. *Schofield's Sons Co.,* 120 *Ga.* 961 (48 S. E. 358)." *Lawhon* v. *Henshaw,* 63 *Ga. App.* 683 (3) (11 S. E. 2d 846). Thus the jury was authorized to believe that the line was recognized by Bennett as the dividing line from the time of the agreement in the year 1935, and that he actually recognized the fact that the joint owners of the Johnson lands, including Mrs. Taylor who was one of the protestants, then went into possession up to the agreed line.

The length of time that the line had been used, approximately 19 years, and the fact that Bennett never apprised the protestants so far as the record discloses of the agreement to which he testified, were circumstances that the jury might consider and which the jury might find outweighed his testimony and served to successfully refute it. In *McRae* v. *Wilby,* 59 *Ga. App.* 401 (1c) (1 S. E. 2d 77), it was held: "In the present case the jury was authorized to find that the direct and positive testimony of the defendant and his office clerk, a witness on his behalf, uncontradicted by any witness, was not consistent with the circumstantial evidence introduced on the trial of the case, and under the law and the evidence to return a verdict in favor of the plaintiff." There was evidence that in 1947 Mrs. Pauline J. Taylor and Charles A. Taylor, the protestants, acquired the entire title to the entire tract of land which they contended extended to the line claimed by them, and that prior to that time and continuously since 1924 Mrs. Taylor had owned an undivided interest in the property. There was evidence that she, with the other joint owners from 1924, was in possession of the lands until she and her husband went into possession in 1947. Consequently, the trial judge did not err in submitting the issue of adverse possession to the jury and giving appropriate instructions in reference thereto. *Fincher* v. *Harlow,* 56 *Ga. App.* 578 (193 S. E. 452).

*Judgment affirmed. Gardner, P. J., Townsend, Carlisle and Nichols, JJ., concur. Felton, C. J., dissents.*

FELTON, C. J., dissenting. I dissent because I do not feel that the charge complained of was authorized by either the pleadings or the evidence. The evidence concerning adverse possession was as follows: Mrs. Taylor testified: "Q. State whether or not this is woods land in here (indicating), Mrs. Taylor, or cleared land across here, primarily. A. Nothing has been cleared; even during the sickness and death of my mother no timber was cut at any time. Since 1924 nothing has been thinned or cut out of there. The evidence is still there now to prove it. Q. Are there any physical marks showing this to be a line on the line that you claim is the line? A. Yes, sir; and we have some here in the court room to show that it has been chopped out. Q. Have you and people who were working timber for you or your family worked—state where you have worked the timber up to. A. When we bought this property in 1947 the trees had been worked for several years up about three or four feet high, and we took on the same boxes that was being worked when we bought it, and on the other side of the lot there was no boxes worked at all except old worked-out faces that was worked out years ago by Mr. J. Ludlam when it belonged to Jerome Crawley. Q. State what line, if any, the boxes were worked up to. A. Up to the old line. Q. Which one? State which line. A. The line that the old land chops were on that we claim as our original line." Charles A. Taylor testified: "Q. State what line was recognized by you working the timber, Mr. Taylor. A. I was only working the timber that was already boxed when I bought the place. Q. State to which line the timber was boxed up to. A. Boxed up to that old original line. There wasn't any marks in there when I bought the place except that line, and I told the men when they worked the timber—I says, 'There's no other timber being worked around there, just work the timber that you find the cups on, because there's none out there and it won't confuse you.' And I got some turpentine men here to verify that statement. Q. Show the jury, Mr. Taylor, now, which line that they worked up to. A. Well, the only line I recognized—the old original line right there (indicating on plat)." Aaron Johnson testified: "Q. Do you know which was considered the line be-

tween Mr. Bennett and Mr. Johnson through the years back then? A. About 1935 this line here (indicating) was put through there as a line. Q. Did they work to it or work to some other place? A. No, they worked to it. Q. Who did? A. Mr. Johnson worked on one side and Mr. Bennett on the other. Q. For how long? . A. Well, now I really don't know, because I left there. Q. More than one year? A. About 1937, and I don't know just how long they did work it. Q. Well, was it one year or more? A. It was one year or more, yes, sir. Q. Well, which was it, one or more? A. I wasn't out there but about two more years on that farm at that time."

The evidence did not authorize a finding that the predecessors in title of the defendants in error had gained prescriptive title under Code Chapter 85-4 to the portion of land lying within the boundary line as contended by the defendants in error. Nor did the evidence authorize a finding that prescriptive title had been gained by adverse possession of the defendants in error coupled with that of the predecessors in title. The charged complained of charged the law stated in Code § 85-1603. The burden of proof was on the defendants in error to show that they had been in actual possession of the portion of land in question under a claim of right for more than seven years and that such possession existed at the time of the processioning. *Norman, Timmons & Co.* v. *Smith,* 131 *Ga.* 69, 72 (4) (61 S. E. 1039). The only act of possession relied on to show actual possession by the defendants in error was the working of turpentine boxes which had been worked by their predecessors in title. It was held in *Flannery & Co.* v. *Hightower,* 97 *Ga.* 592, 606 (25 S. E. 371) that a jury might find that the working of trees for turpentine purposes might constitute adverse possession in the case in question. The court there said:

"Whether or not the cultivation of a turpentine farm upon a tract of land is such an occupancy and so notorious, is a question of fact dependent upon the character of acts relied upon to constitute such a possession. In determining this question, the jury are to look to what are the visible signs of occupancy.

"In the present case, according to the evidence as it is disclosed by the record, it appears that every pine tree upon the tract of land, available for that purpose, had been boxed and worked for

878

turpentine purposes; that in the process of boxing, hacking, dipping, scraping and racking round the trees, there was scarcely a day in the year upon which there was not some servant of the defendants actually employed upon this tract of land, at work in such a manner as to indicate to the most casual observer a purpose upon the part of the person in possession to appropriate the land to his own exclusive use, rather than as indications of mere predatory invasions of the property by a casual trespasser."

In the instant case the evidence does not show such an activity in the working of the trees as would give the required notice as set up in the *Flannery* case. Not only does the evidence fail to show the degree of activity necessary to show actual possession by the defendants in error but it also fails to show such actual possession for seven years and at the time the processioners ran the line in dispute (see *Riddle* v. *Sheppard,* 119 *Ga.* 930, 931, 47 S. E. 201), and that the running of the line by the processioners would, as prohibited by Code § 85-1603, disturb actual possession.