27277. CALDWELL, administrator, *v.* CALDWELL *et al.*, executors.

638

DECIDED MARCH 11, 1939.

*Howell Brooke,* for plaintiff.

*Blair & Gardner, George D. Anderson,* for defendants.

STEPHENS, P. J.    W. M. Caldwell, as administrator of the estate of D. W. Caldwell, brought suit against Luvada Cornelia Caldwell and Andrew Jackson Caldwell, as executors of the estate of Dawson Mathis Caldwell, to recover on a series of notes in the principal sum of $100 each, aggregating $1100, alleged to have been executed by the defendants' testate, D. M. Caldwell, to the plaintiff's intestate, D. W. Caldwell, for the purchase-money of certain real estate described as the old Caldwell home place in Lumpkin County, Georgia, a deed conveying which D. W. Caldwell had executed and delivered to D. M. Caldwell.    It appeared from the petition that the purchase-price was $1500, that fifteen notes for $100 each, aggregating $1500, had been executed by D. M. Caldwell to D. W. Caldwell, but that at the time of the filing of the petition by the plaintiff only eleven of the notes were due, four of them not having matured.    It was alleged that none of the notes had been paid.    It was alleged in the petition that the notes had been "lost or destroyed or stolen," and that the plaintiff was unable to locate them.    Attached to the petition were alleged substantial copies of the notes.

The defendants, in their plea, denied that their testator, D. M. Caldwell, had ever executed such notes.    The defendants further alleged that if there were any such notes as alleged, purported to have been signed and executed by D. M. Caldwell, that the execution of such notes was not the act or deed of D. M. Caldwell, and that he had never ratified the act of any person in executing such notes in his name.    The defendants admitted that the alleged notes sued on had never been paid.

■ It appears from the evidence that in March, 1926, D. W. Caldwell, the plaintiff's intestate, who was an old man living at the home of one of his daughters, Mrs. J. T. White, executed to his son, D. M. Caldwell, the testate of the defendants, a deed of conveyance, for a cash consideration of $1500, to property known as the Caldwell home place. The daughter, Mrs. White, and her husband, J. T. White, testified in substance that in 1926, D. W. Caldwell lived in the house with them; that sometime in March of that year D. W. Caldwell and D. M. Caldwell both stated to the witnesses at their home that D. W. Caldwell had sold the home place to D. M. Caldwell for $1500 represented by fifteen $100 notes; that the witnesses saw these notes, and the witness J. T. White read them; that they were signed by D. M. Caldwell and payable $100 monthly; that D. W. Caldwell turned the notes over to one of the witnesses, Mrs. White, his daughter, for the purpose of being kept by her for him; that she took the notes, tied them up and placed them in D. W. Caldwell's trunk, and kept them there two or three months; that D. W. Caldwell afterwards moved to the home of another daughter, Mrs. Jones, who lived near Dahlonega; that he died there October 29, 1928; that while he was at the home of Mrs. Jones, and a few days before his death, while he was unconscious, the witness, Mrs. White, his daughter, who was there, saw the notes in a box in his trunk; that she "poured them out" and counted them, and they were fifteen in number; that they were the same notes that she had kept in her home, and that her father, D. W. Caldwell, had asked her to put away for him. So far as appears from the evidence this was the last time these notes were ever seen by anybody. So far as appears from the evidence nobody except D. W. and D. M. Caldwell, Mrs. White, the daughter of D. W. Caldwell, and her husband, J. T. White, ever saw or had direct knowledge of the existence of these notes.

The plaintiff, who was a son of D. W. Caldwell, and one of the heirs to the estate, testified that after his father's death he searched for the notes at the home of his sister, Mrs. Jones, where his father died, and the notes could not be found. Nowhere in his testimony does it appear that he ever saw the notes or otherwise knew of their existence. The wife of D. M. Caldwell, the alleged maker of the notes, and two of his children, testified that they knew nothing whatever about these notes. B. V. Grier, the justice of the peace

who drew the deed from D. W. Caldwell to D. M. Caldwell, testified that he did not remember about preparing the notes, and that he had no recollection of drawing any notes at all. It also appears that after the death of D. W. Caldwell, which was on October 29, 1928, Mrs. Myra Underwood, was, on January 5, 1930, by the ordinary of Lumpkin County, appointed administratrix of the estate of D. W. Caldwell, and that afterwards, on February 22, 1930, she made a return to the ordinary in which she stated that she had made full investigation and after diligent search she found no property or assets belonging to the estate, and to the best of her knowledge and belief there was no property or assets belonging to the estate.

J. T. White testified that he read the notes and that the notes had D. M. Caldwell's name "right down there, and 'seal' right out there." The notes sued on, as appears from the copies attached to the petition, had been executed under seal. It appears from the evidence that before the institution of the present suit, which was on September 16, 1937, the plaintiff had, on December 31, 1935, filed a suit against the same defendants to recover on ten of such notes, which at the time were past due. This suit was dismissed and the present suit was instituted. It appears from the evidence that D. M. Caldwell died in November, 1934. He died about six years after the death of D. W. Caldwell. No suit was brought against D. M. Caldwell within this period, although eight of the notes had matured before the death of D. M. Caldwell.

The witness for the defendant, Mrs. J. T. White, testified on direct examination that D. M. Caldwell was at her sister's house where her father died, the day of his funeral, and was there the night before, and that he did not spend the night there but stopped there as he came up. She testified that "as to whether Doss [her brother D. M. Caldwell] was the type of man that would steal notes of that kind—well, the notes went. I can't say about that, whether he was the type of man that would steal notes of that kind or not." The witness for the plaintiff, J. T. White, the son-in-law of D. W. Caldwell, testified on direct examination that about the time of the alleged transaction of the execution of the notes, D. M. Caldwell stated that he had bought his father's place for fifteen $100 notes; that he was going to give Mrs. White, his sister, her part of it, but that he was not going to give "nary another one of them a

damned cent." W. M. Caldwell, the plaintiff, who was a brother of D. M. Caldwell, testified: "I knew Doss's [D. M. Caldwell] reputation. He was a man of pretty good character. I couldn't tell you anything about whether he was the type of man that would go into his deceased father's trunk and steal $1500 worth of notes; he was good in some things, and in some things he wasn't. Me and him didn't get along any, and I hardly ever visited him in his last days." It was alleged in paragraph 9 of the petition that the notes sued on "had been lost, destroyed or stolen."

Over objection of the plaintiff the court allowed testimony of a number of witnesses offered by the defendant to the effect that D. M. Caldwell, the alleged maker of the notes, was a man of good character, met his obligations promptly, and was not a man of such character as would go into his father's home when his father was on his death bed and steal notes to the amount of $1500.

The above is substantially all the material evidence on the issue as to whether the alleged notes had ever been executed, and whether the estate of D. M. Caldwell was liable therefor. The jury found a verdict for the defendants. The plaintiff moved for a new trial on the general grounds that the verdict was without evidence to support it; that the court erred in admitting, over objection of the plaintiff, the evidence as to the good character of D. M. Caldwell, the objection being on the ground that this evidence was hurtful and prejudicial to the movant, was immaterial, and did not shed any light on the issues involved, and on the ground that no attack had been made on D. M. Caldwell's reputation for honesty and integrity or on his reputation involving his character, but that the suit was one upon notes only in which no question of fraud was involved; that the court erred in charging the jury as follows: "Something has been said about payment for the land referred to in the proceedings. In the case you have under consideration, it is a case involving a suit upon certain promissory notes, alleged to have been executed by D. M. Caldwell during his lifetime to D. W. Caldwell, and the question before you is whether or not the executors of D. M. Caldwell are liable to the plaintiff in this case upon said notes. And the question of whether or not D. M. Caldwell paid D. W. Caldwell for the farm in Lumpkin County referred to in the deed introduced in evidence, is not a matter presented by the pleadings in this case, but the question for you to decide is as to

the liability upon the notes referred to in the petition." This charge was excepted to by the plaintiff on the ground that it amounted to an instruction to the jury that if D. W. Caldwell made a deed to the land to D. M. Caldwell that the latter would not be liable on the notes.

The general character of a party to a case is relevant and may be put in evidence where "the nature of the action involves such character and renders necessary or proper the investigation of such conduct." Code, § 38-202. The petition in this case alleges that the deceased D. M. Caldwell, executed to his father, D. W. Caldwell, certain described promissory notes. The suit was brought after the deaths of both D. W. Caldwell and D. M. Caldwell, and alleges that these notes were lost or stolen. W. M. Caldwell, the plaintiff, and Mrs. J. T. White, children of D. W. Caldwell and brother and sister of D. M. Caldwell, cast aspersions upon his character in their testimony, and clearly indicated that he either stole the notes, or was capable of performing such an• act. This allegation in the petition, and the evidence, clearly charge D. M. Caldwell with being a man of bad character. His character was put in issue, and the defendants, his legal representatives, had the right to defend it by offering evidence as to his good character. The court therefore did not err in admitting evidence as to the good character of D. M. Caldwell.

It is contended by the plaintiff that the evidence as contained in the testimony of J. T. White and Mrs. J. T. White that D. M. Caldwell admitted executing the notes in payment for D. W. Caldwell's home place in Lumpkin County, and that the witnesses had seen the notes, was uncontradicted and undisputed, and that the evidence that the land was deeded to D. M. Caldwell and that the notes had not been paid, was also uncontradicted and undisputed, and that therefore the evidence, as a matter of law, demanded a verdict for the plaintiff, and that the verdict found for the defendants was without evidence to support it and contrary to law. In determining where the preponderance of evidence lies, the jury may consider all the facts and circumstances of the case, the witnesses' manner of testifying, their intelligence, their means and opportunity for knowing the facts about which they testify, the nature of the facts about which they testify, and the probability or improbability of their testimony, their interest or want of interest,

and also their personal credibility so far as the same may legitimately appear upon the trial. Code, § 38-107. "The interest of a witness in the result of the suit may always be considered in passing upon his credibility; and where there are circumstances inconsistent with the truth of his testimony, the jury are not obliged to believe him, even though he is not contradicted by any other witness." *Detwiler* v. *Cox,* supra. "The rule that the uncontradicted testimony of unimpeached witnesses can not lawfully be arbitrarily disregarded 'does not mean that the jury are obliged to believe testimony which under the facts and circumstances disclosed they in fact discredit, but means that they are to consider the testimony of every witness who is sworn, and not arbitrarily disregard the testimony of any witness.'" *Fincher* v. *Harlow,* 56 *Ga. App.* 578 (193 S. E. 452).

It appears from the evidence that of the various children and relatives of D. W. Caldwell, only his daughter, Mrs. White, and her husband had ever seen or known of the existence of the alleged notes. The nature and contents of the notes were established only by parol evidence of Mr. and Mrs. White. It appears that the notes, if they had ever existed, were lost; that a number of the notes had fallen due before the death of D. M. Caldwell, the alleged maker, and that no suit had been brought thereon until after his death; that D. M. Caldwell's wife and children had never known of the existence of these notes; that a search had been made after D. W. Caldwell's death, among his effects, at the home of a daughter where he died, and the notes could not be found. It appears that Mrs. White, the daughter, had a financial interest in the case and its results, and that her husband also had an interest in the result of the case. It also appears from the evidence, by intimation and innuendo, that D. M. Caldwell was a man of bad character, and one who might steal the notes from his father. There is also evidence that D. M. Caldwell was a man of good character and a man incapable of such conduct. Under all the facts and circumstances the jury were authorized, in measuring the credibility of the witnesses and weighing all the evidence, in concluding that the alleged notes were never made or executed by D. M. Caldwell, and the verdict for the defendants was authorized.

The excerpt from the charge of the court excepted to was not calculated to instruct the jury that if D. W. Caldwell had deeded

the land to D. M. Caldwell there could be no liability by the defendants on the notes sued on. The charge clearly instructed the jury that the only issue was whether the notes had been executed by D. M. Caldwell and had not been paid; and if so, the jury should find for the plaintiff. The verdict for the defendants was authorized, and no error appears.

*Judgment affirmed. Sutton and Felton, JJ., concur.*