A99A1726. THE STATE v. McTAGGART.
(528 SE2d 309)

SMITH, Judge.

After the trial court granted Jerry McTaggart's motion to suppress, the State filed this appeal. The trial court determined that McTaggart did not authorize police to conduct a search of the interior of his home. Since the court's ruling was not clearly erroneous, we affirm.

"A trial court's decision [on] questions of fact and credibility at a suppression hearing must be accepted unless clearly erroneous.

[Cit.]" *Garcia v. State*, 195 Ga. App. 635, 637 (1) (394 SE2d 542) (1990). Since the trial court sits as the trier of fact, its findings are analogous to a jury verdict. *Morgan v. State*, 195 Ga. App. 732, 735 (3) (394 SE2d 639) (1990). Keeping these principles in mind, we must construe the evidence most favorably toward upholding the trial court's findings and judgment. *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994).

On December 26, 1997, emergency assistance was summoned to McTaggart's home after two Rottweilers savagely mauled the three-year-old son of McTaggart's girlfriend. Responding to a 911 call that a child in the yard had been attacked by dogs, police arrived at McTaggart's home shortly after other emergency personnel. McTaggart lived with his girlfriend and her two children in a mobile home that had a large fenced yard with a gate.[1] After the boy, Dakota Randolph, had been evacuated by a Life Force helicopter, McTaggart hurriedly left home hoping to intercept the helicopter at Erlanger Hospital. As McTaggart ran to his vehicle, having been informed that authorities would be remaining for a while, he told police something to the effect, "[d]o what you have to do and lock the gate when you're done." McTaggart did not ask police to check his household appliances or to ensure that any doors or windows were locked. He mentioned only the gate.

Police remained on the premises for a couple of hours, taking photographs and investigating the accident/crime scene of the incident. The Rottweiler attack had occurred outside in the yard, and the child's injuries were so serious he died before reaching the hospital.

Detective Dan Bilbrey, an investigator from the Catoosa County Sheriff's Department, and Captain Loren Schmidt, head of the detective division, entered McTaggart's residence. When asked if he had ever obtained anyone's consent to enter the home, Bilbrey replied in the negative. According to Bilbrey, they did so "to make sure that no utilities, stoves, et cetera had been left on and make sure nobody else was inside the trailer that shouldn't be and to secure the trailer." Bilbrey admitted that when he went into the house, "everyone was gone" and that although he could have just reached in and pulled the front door shut, he had walked through the entire trailer. While on the premises, Bilbrey purportedly discovered several marijuana "roaches" in an ashtray located inside the master bedroom. Bilbrey denied that he was looking for additional blood at the time when he noticed the "roaches." He claimed that he had wanted to make certain that no appliances had been left on. But a bedroom is not a kitchen,

---

[1] The State and McTaggart stipulated that the two Rottweilers had been at this property for only four days before the day of the attack.

and police had neither permission nor a warrant to search for blood. A sketch of the trailer's floor plan indicates that neither the front door nor the rear door is situated near this bedroom. Bilbrey admitted that when the investigators left, they did not lock the front door or the gate but just closed them. He also conceded that he had made no effort to obtain a search warrant.

McTaggart, indicted for two counts of involuntary manslaughter, sought to exclude any evidence obtained as a result of an illegal search. He moved to suppress such evidence on the basis that he did not consent to the warrantless and unauthorized entry and search of his home. McTaggart contended that the search of his residence and private living area was illegal, unreasonable, and unconstitutional. The trial court agreed and granted the motion to suppress. The court noted that although the prosecuting officer testified "that the entry was for the purpose of securing it and making sure no appliances had been left on," other "[u]nobjected testimony also established that another detective's report indicated that the entry was for an investigative purpose." The court also observed that "[t]here was also ample opportunity for the police to obtain a search warrant, which was not done."

In its sole assertion of error, the State offers several reasons in support of its contention that the trial court erred, including: that "there was no search at all," that the officers lacked any "investigative intent," that exigent circumstances existed, and that the plain view doctrine applied. We find no merit in any of these arguments.

No evidence showed that police requested and obtained McTaggart's permission to conduct a search of his home. Absent exigent circumstances or the application of an exception to the warrant requirement, police have no right to conduct a search of a home without a warrant. *State v. David*, 269 Ga. 533, 535-536 (2) (501 SE2d 494) (1998). The presence of contraband without more does not give rise to exigent circumstances. *Davis v. State*, 262 Ga. 578, 582 (3) (422 SE2d 546) (1992). No evidence indicated that the officer reasonably believed that the warrantless entry was justified to protect or preserve life or to avert serious injury. See id. at 583. Bilbrey admitted having been informed that the dog attack was limited to one person, three-year-old Dakota Randolph. Even assuming that McTaggart told police to close the gate behind them after they finished their business, any ambiguity in such a directive cannot reasonably be construed as having authorized a general search of the entire premises including the bedrooms. Furthermore, as the determiner of witness credibility, the trial court was free to disregard the officer's assertion that he had been looking for appliances left on or for other possible victims.

Nor was the plain view doctrine applicable. Under that doctrine:

> [A] police officer who observes contraband in plain view is entitled to seize it, so long as he is at a place where he is entitled to be, i.e., so long as he has not violated the defendant's Fourth Amendment rights in the process of establishing his vantage point. [Cits.]

*Galloway v. State*, 178 Ga. App. 31, 33-34 (342 SE2d 473) (1986). Here, the State, which bore the burden of showing that the search was lawful, failed to prove that the investigator was at a place he was entitled to be. *State v. O'Bryant*, 219 Ga. App. 862, 865 (467 SE2d 342) (1996); compare *Galloway*, supra at 34. Without question, McTaggart had a reasonable expectation of privacy in the bedroom of his own home. See generally *Espinoza v. State*, 265 Ga. 171, 172 (2) (454 SE2d 765) (1995). The plain view exception to the warrant requirement is based on discovery of incriminating evidence that is not the product of a search. *Mitchell v. State*, 181 Ga. App. 470 (352 SE2d 647) (1987). "Where a plain view seizure takes place, there is no search. [Cit.]" *Pickens v. State*, 225 Ga. App. 792, 795 (1) (b) (484 SE2d 731) (1997). But here there was a search, the officer did not have a legal right to be looking around inside the bedroom, and the discovery of the contraband was not inadvertent. *State v. O'Bryant*, supra at 865. Since the evidence supports the trial court's findings, we will not disturb the court's ruling. *Ward v. State*, 193 Ga. App. 137, 138 (1) (387 SE2d 150) (1989); see *Ledford v. State*, 220 Ga. App. 272, 273 (469 SE2d 401) (1996).

*Judgment affirmed. Pope, P. J., and Miller, J., concur.*

DECIDED JANUARY 19, 2000.

*Herbert E. Franklin, Jr., District Attorney, Melodie S. Bedford,* for appellant.

*Little, Bates & Kelehear, Sam F. Little,* for appellee.

