A06A2225. SNYDER v. THE STATE.
(643 SE2d 861)

SMITH, Presiding Judge.

Harley Snyder was charged with homicide by vehicle in the first degree, serious injury by vehicle, driving under the influence of alcohol to the extent that he was a less safe driver, driving with an unlawful alcohol concentration, failing to yield the right of way, and violating Georgia's seat belt law. Following the denial of his motion to suppress, this court granted Snyder's application for interlocutory

appeal. Snyder contends that the trial court erred in failing to suppress the results of his blood alcohol test. We disagree and affirm.

On appeal from the denial of a motion to suppress, "where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review." (Citations omitted.) *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994). This court's responsibility in reviewing the grant or denial of a motion to suppress "is to ensure that there was a substantial basis for the trial court's decision." (Citation omitted.) *Sego v. State*, 279 Ga. App. 484 (631 SE2d 505) (2006).

The record reveals that a trooper with the Georgia State Patrol responded to the scene where two vehicles had collided. The trooper concluded that Snyder, the driver of one of the vehicles, failed to yield at a stop sign and struck an oncoming vehicle. The trooper detected a strong odor of alcohol on Snyder's person and in his vehicle. Concerned that Snyder may have had some other unknown injuries, and because emergency personnel had placed Snyder in a neck brace, the trooper did not conduct any field sobriety tests. He did, however, administer an alco-sensor test which registered positive for alcohol. Snyder had no visible injuries, and his passenger was conscious and alert with what appeared to be only minor lacerations to his face. Nevertheless, emergency medical personnel transported both Snyder and his passenger to a hospital, where his passenger later died.

The trooper contacted a public safety officer at the hospital and requested that the officer read Snyder the implied consent warning and oversee a chemical test of Snyder's blood. The officer complied and Snyder consented to a test of his blood. Although the officer had probable cause to arrest Snyder prior to the blood test, Snyder was not arrested. A few days following the death of the victim, a warrant was issued for Snyder's arrest.

Snyder argues in two enumerations that the trial court erred in denying his motion to suppress because the trooper did not have probable cause to request a blood test and was required to place him under arrest prior to such a request. He contends that the subsequent death of his passenger cannot now validate what he contends was the invalid request to give his blood to test for the presence of alcohol.

OCGA § 40-5-55 (a) provides:

> The State of Georgia considers that any person who drives or is in actual physical control of any moving vehicle in violation of any provision of Code Section 40-6-391 constitutes a direct and immediate threat to the welfare and safety of the general public. Therefore, any person who operates a motor vehicle upon the highways or elsewhere throughout this

state shall be deemed to have given consent, subject to Code Section 40-6-392, to a chemical test or tests of his or her blood, breath, urine, or other bodily substances for the purpose of determining the presence of alcohol or any other drug, if arrested for any offense arising out of acts alleged to have been committed in violation of Code Section 40-6-391 or if such person is involved in any traffic accident resulting in serious injuries or fatalities. The test or tests shall be administered at the request of a law enforcement officer having reasonable grounds to believe that the person has been driving or was in actual physical control of a moving motor vehicle upon the highways or elsewhere throughout this state in violation of Code Section 40-6-391. The test or tests shall be administered as soon as possible to any person who operates a motor vehicle upon the highways or else-where throughout this state who is involved in any traffic accident resulting in serious injuries or fatalities.

Further, the Georgia Supreme Court has held that

where an individual has been involved in a traffic accident resulting in serious injuries or fatalities *and* the investigat-ing law enforcement officer has probable cause to believe that the individual was driving under the influence of alco-hol . . . the ensuing search [via chemical testing] is both warranted and constitutional.

(Emphasis in original.) *Hough v. State*, 279 Ga. 711, 713 (1) (a) (620 SE2d 380) (2005).

In short, one of two circumstances (in addition to probable cause) must exist to trigger the reading of implied consent: (1) if the person is involved in any traffic accident resulting in serious injuries or fatalities,[1] or (2) if the person is arrested for violation of OCGA § 40-6-391 (DUI). Snyder argues that at the time the implied consent was read, none of the circumstances enumerated in OCGA § 40-5-55 existed, since he was not arrested and the traffic accident, at the time he was read his implied consent rights, had not resulted in a serious injury or fatality.

The first circumstance — if arrested for violation of OCGA § 40-6-391 — contemplates that the person be arrested prior to a reading of implied consent. *Hough*, supra, 279 Ga. at 715 (2) (a) (the

---

[1] It is undisputed that the accident did not involve serious injury as defined in OCGA § 40-5-55 (c) ("a fractured bone, severe burns, disfigurement, dismemberment, partial or total loss of sight or hearing, or loss of consciousness").

statutory mandates of OCGA § 40-5-55 require an arrest prior to any reading of implied consent), and at 718 (2) (b) (reading of implied consent six days before arrest was invalid). The second circumstance, however, requires only that the person "is involved in any traffic accident *resulting in* serious injuries or fatalities." (Emphasis supplied.) OCGA § 40-5-55 (a). Therefore, based on the plain wording of the statute, there is no requirement that the serious injury or fatality occur prior to reading the implied consent warnings, only that an individual is deemed to have given consent "when" or "if" this circumstance exists. "Where the language of a statute is plain and susceptible to only one natural and reasonable construction, courts must construe the statute accordingly." (Citation, punctuation and footnotes omitted.) *Hough*, supra, 279 Ga. at 716 (2) (a). And it is not unreasonable to expect that in some cases it will not be evident or known to police that the accident resulted in a serious injury or fatality until long after the accident itself has occurred.

In this case, the trooper had probable cause to believe that Snyder was driving under the influence of alcohol based upon his observations at the scene and the result of the alco-sensor test. See *Jenkins v. State*, 282 Ga. App. 106, 109 (637 SE2d 818) (2006). Because the traffic accident also resulted in a fatality, Snyder is therefore deemed to have consented to a test of his blood. Accordingly, his arrest was not required prior to the reading of the implied consent warnings. See *Hough*, supra, 279 Ga. at 714 (1) (a) ("nothing in OCGA § 40-5-55 requires a DUI suspect to be arrested in order to trigger his or her implied consent to testing following a traffic accident resulting in serious injuries or fatalities").

Although we could imagine a more explicit statute concerning not only *under what circumstances* a person is deemed to have given consent, but also *when* implied consent warnings should be read, a plain reading of the statute and the holding in *Hough*, supra, show that the implied consent warnings and request for a blood test were valid in this case. The trial court therefore did not err in denying Snyder's motion to suppress.

*Judgment affirmed. Ruffin and Phipps, JJ., concur.*

DECIDED MARCH 20, 2007 — 

*Brendan N. Fleming*, for appellant.

*Daniel J. Craig, District Attorney, Jason R. Troiano, Assistant District Attorney*, for appellee.