A07A2378. HOLLENBACK v. THE STATE.
A07A2379. LOWERY v. THE STATE.
(657 SE2d 884)

PHIPPS, Judge.

Law enforcement officers responded to a radio dispatch regarding a disorderly person at a county high school. Upon arrival, they were informed that the subject of the complaint, Hettie Lowery, and her companion, Marcella Hollenback, had gone to the board of education. Upon being arrested there, Lowery was found to be in possession of a handgun. A search of her truck then revealed a variety of contraband drugs.

An indictment was returned charging Lowery and Hollenback jointly and individually with various counts of unlawful drug possession and charging Lowery, individually, with disorderly conduct, possession of a weapon on school property, disruption of a public school, and possession of a firearm during commission of a crime. On motions to suppress filed by both Lowery and Hollenback, the trial court ruled that the seizure of Lowery's handgun was the product of an illegal arrest but that the contraband drugs from her truck were found during a valid consent search. Following the trial court's certification of its order for immediate review, we granted Lowery's and Hollenback's applications for interlocutory appeal. We reverse.

When an appellate court reviews a trial court's decision on a motion to suppress, our responsibility is to ensure that there was a substantial basis for the decision. We are guided

---

[21] *Crown Andersen v. Ga. Gulf Corp.,* 251 Ga. App. 551, 554 (2) (554 SE2d 518) (2001) (citations and punctuation omitted).

by three principles when interpreting the trial court's determination of the facts. When considering such a motion the trial court is the trier of facts. The court hears the evidence, and when its findings are based upon conflicting evidence, they are analogous to a jury verdict and must not be disturbed by an appellate court if any evidence supports them. Also, the trial court's decisions regarding questions of fact and credibility of witnesses must be accepted unless they are clearly erroneous, and the evidence must be construed most favorably toward upholding the trial court's findings and judgment. Additionally, when the evidence is uncontroverted and no question about a witness's credibility exists, the trial court's application of the law to undisputed facts is subject to de novo appellate review.[1]

Lieutenant Donald Carr of the Madison County Sheriff's Office was the only witness to testify at the hearing on the motions to suppress. He testified that two other officers responded to the call at Madison County High School. When they arrived, the principal and assistant principal informed them that Lowery and Hollenback had come to the school, that Lowery had disrupted the school and engaged in disorderly conduct while there, and that she and Hollenback had then gone to the Madison County Board of Education (BOE). The school principal said that he wanted to bring charges against Lowery. Carr then met the other officers at the BOE, where they found Lowery and Hollenback in the office building engaged in a heated conversation with the assistant school superintendent.

The officers thereupon escorted Lowery and Hollenback out of the building and informed Lowery that she was being arrested as a result of the incident at the high school. Because Hollenback was not being arrested, she was given permission to leave the BOE in a truck that Lowery owned and that the women were using as their means of transportation. Lowery, therefore, handed the keys to her truck to Hollenback. Before Hollenback left, however, Lowery was asked if she had anything in her pockets the officers needed to know about. Lowery responded that she had a gun. Upon searching her, one of the officers then found a loaded .25 caliber pistol in her pocket. Carr, therefore, decided to search the truck for additional weapons. Drugs were found in the women's purses during the search of the truck.

---

[1] *Hobbs v. State*, 272 Ga. App. 148 (1) (611 SE2d 775) (2005) (citations and punctuation omitted).

The trial court concluded that Lowery's warrantless arrest was unauthorized under OCGA § 17-4-20 (a), because the offenses for which she was arrested were not committed in the presence of any of the officers and, therefore, the search incident to her arrest was invalid. Consequently, evidence of the pistol found in Lowery's pocket was excluded. The trial court further concluded, however, that the search of Lowery's truck was supported by Hollenback's express consent and by Lowery's implied consent. Therefore, the court refused to suppress the evidence seized from the truck.

On the issue of consent, Carr initially testified on cross-examination by Lowery's counsel that, after Lowery had given the keys to her truck to Hollenback, "Hollenback handed me the keys after I asked her if I could look in the truck to make sure there wasn't any other weapons or anything in there." In his later testimony, however, Carr made clear that he had thought that he had legal grounds to search the truck without consent; that he would not have let Hollenback drive the truck away without first searching it; and that, rather than asking Hollenback whether he could search the truck, he told her that he was going to search the truck, whereupon Hollenback, without protest by Lowery, handed him the keys.

Specifically, on cross-examination by Hollenback's attorney, Carr testified, "I told Ms. Hollenback when we were walking over there to the truck that I was going to look inside the truck to make sure there [were not] any further weapons inside that truck." On redirect examination by the prosecutor, Carr then testified, "I told Ms. Hollenback [I wanted to look into the car] after Ms. Lowery asked that she be able to drive it off. . . . I told her I wanted to check the vehicle before she drives it off to make sure there were no further weapons inside this vehicle." On recross-examination by Lowery's attorney, Carr later testified, "I told [Hollenback] I was going to search the truck and she stood there and watched me. . . . If she wanted to walk down the road and leave, hey, she could have gone, but she wasn't going to take the truck with her until it was searched to make sure that there [were] no more weapons." Then, on further recross-examination by Hollenback's attorney, Carr again testified:

> I watched Ms. Lowery give the keys to Ms. Hollenback. I told Ms. Hollenback I wanted to look inside the truck. Ms. Hollenback said, here you go and she stood right there with me while everything was being searched. . . . [Ms. Lowery] handed [the keys] to [Hollenback] and she handed them to me.

"Where the state seeks to justify a warrantless search on grounds of consent, it has the burden of proving that the consent was, in fact, freely and voluntarily given."[2]

The voluntariness of consent is determined by the totality of the circumstances; no single factor controls. The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of objective reasonableness — what would the typical reasonable person have understood by the exchange between the officer and the suspect. The appropriate inquiry is whether a reasonable person would feel free to decline the officer['s] request to search or otherwise terminate the encounter. Mere acquiescence to the authority asserted by a police officer cannot substitute for free consent. And, we are required to scrutinize closely an alleged consent to search.[3]

Carr's testimony, viewed in its entirety, shows without dispute that, instead of requesting permission to conduct a vehicular search as did the officers in cases such as *State v. Duran*,[4] *State v. Corley*,[5] and *Borda v. State*,[6] Carr informed Hollenback that he was going to search the vehicle before she would be allowed to drive it away and that she acquiesced in the officer's decision by handing him the keys. That, in itself, did not show that her consent was freely and voluntarily given.[7] It follows that Lowery's mere failure to object did not show that her consent was freely and voluntarily given, either.

*Judgment reversed. Johnson, P. J., and Mikell, J., concur.*

DECIDED FEBRUARY 6, 2008.

*Jana M. Whaley*, for appellant (case no. A07A2378).
*Alice A. Button*, for appellant (case no. A07A2379).

---

[2] *Borda v. State*, 187 Ga. App. 49, 50 (369 SE2d 327) (1988) (citation and punctuation omitted).

[3] *State v. Jourdan*, 264 Ga. App. 118, 121 (1) (589 SE2d 682) (2003) (citations and punctuation omitted).

[4] 220 Ga. App. 296 (469 SE2d 429) (1996).

[5] 201 Ga. App. 320 (411 SE2d 324) (1991).

[6] Supra.

[7] See *State v. Jourdan*, supra; compare *Borda v. State*, supra (finding that after the officer asked for permission to conduct a patdown, the defendant gave nonverbal consent to the patdown by holding up his arms and turning).

*Robert W. Lavender, District Attorney, James W. Webb, Assistant District Attorney*, for appellee.