## A11A0601. THE STATE v. AUSTIN.
(714 SE2d 671)

DILLARD, Judge.
The State appeals the trial court's grant of Robert John Austin's motion to suppress statements made and evidence obtained at his home after officers responded to a call that shots had been fired there. The State contends that the trial court erred in granting the motion after finding that Austin had not been read his *Miranda* rights. For the reasons noted infra, we affirm in part and reverse in part.

The record shows that Cobb County police officers received a call that shots had been fired in a residential area on the afternoon in question. The call, made by a neighbor, implicated Austin's home, and at least four officers responded by approaching the home in a

tactical manner. Using trees and other available cover to conceal their bodies (though no additional shots were heard during the approach), the officers carefully made their way to Austin's driveway, where they spotted two men outside the garage.

As the officers drew closer with their weapons at the ready, one of the men—later determined to be Austin—spotted them and retreated into the garage. Concerned that the men might be armed, the officers ordered the men to show themselves with their hands up. Although the gentleman outside the garage was very cooperative, Austin proved more difficult. Indeed, when Austin emerged from the garage, he appeared angry and did not immediately show his hands.

Thereafter, both men were identified and subjected to pat-downs. During this procedure, Austin was argumentative, slow to respond, and belligerent. He also appeared intoxicated, with slurred speech, glassy eyes, and unsteady balance; and he admitted to having consumed three to four beers that afternoon. And when the officers informed Austin that they were responding to a call of shots fired, he began to rant about his neighbor and an apparent conflict between the two of them.

During this tirade, Austin appeared to take on a fighting stance, squaring up with an officer face-to-face. In response, the officer handcuffed Austin, and in doing so told him that (1) he was not under arrest, (2) he was being cuffed for both the officers' protection and his own, and (3) he needed to calm down. Thereafter, Austin admitted to having fired a gun but said that he had done so while engaging in target practice in his back yard. Nevertheless, officers were concerned that, given the proximity to other homes, the potential for injuries could be high depending on the type of gun fired. And although Austin claimed to have used a handgun, the officers wanted to visually verify that he had not used a shotgun—which, in the officers' opinion, would have heightened the potential for injuries.

Eventually, Austin—who by that time had calmed down but remained in handcuffs[1]—stated that he would take the officers inside his home to see the gun he had used. He then escorted the two officers inside (instructing them in how to manipulate a tricky doorknob to enter the house), and led them to a bedroom, where he indicated that the gun he had used for target practice was beneath the mattress. While retrieving and securing the handgun, an officer noticed a small amount of marijuana in a container on the bedside

---

[1] An officer testified that Austin remained in handcuffs because although he had "calmed down significantly," he had not done so to a point at which officers felt it was "safe to . . . just let [Austin] roam about."

table. And while Austin was not placed under arrest at that point, the officer asked if he had additional guns or drugs in the house and, if so, to inform them of their locations. Austin then indicated that there was additional marijuana in his dresser, which the officers then opened to find a one-gallon bag containing the contraband. Austin also led the officers through the remainder of the home, pointing out additional firearms (which the officers collected).

Once Austin and the officers exited the home, Austin was placed under arrest. He was subsequently indicted on felony possession of marijuana[2] and possession of a firearm during the commission of a crime,[3] namely the handgun that was retrieved from beneath the mattress.

Thereafter, Austin filed a motion to suppress "tangible evidence found inside the . . . residence and alleged statements made while [Austin] was in custody without" *Miranda* warnings. The trial court granted the motion, finding that the statements made by Austin after he was handcuffed and the tangible evidence seized as a result of those statements were inadmissible because Austin was in custody for purposes of *Miranda*. This appeal follows.[4]

At the outset, we note that on a motion to suppress, the State has the burden of proving that a search was lawful.[5] And "[a]n appellate court reviewing a trial court's order on a motion to suppress must construe the evidence most favorably to the upholding of the trial court's findings and judgment."[6] But when, as here, "the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo review."[7] With these guiding principles in mind, we will now address the State's enumerations of error in turn.

1. The State first argues that the trial court erred in excluding physical evidence obtained from Austin's home by misapplying state and federal law to find that the tangible evidence must be excluded as the "fruit" of statements obtained in violation of *Miranda v.*

---

[2] *See* OCGA § 16-13-30 (a) ("[I]t is unlawful for any person to purchase, possess, or have under his control any controlled substance.").

[3] *See* OCGA § 16-11-106 (b) (making it unlawful for a perpetrator to have "on or within arm's reach of his or her person a firearm . . ." during the commission or attempted commission of certain crimes).

[4] *See* OCGA § 5-7-1 (a) (4) (permitting a direct appeal when the State's evidence has been ruled inadmissible); *see also State v. Stanfield*, 290 Ga. App. 62, 63 (1) (658 SE2d 837) (2008) (holding that "[a]n appeal involving the exclusion of a statement on voluntariness grounds is no exception to" OCGA § 5-7-1).

[5] *Walker v. State*, 299 Ga. App. 788, 788 (683 SE2d 867) (2009).

[6] *Id.* (footnote omitted).

[7] *Id.*

*Arizona.*[8] We agree that the trial court misapplied the law;[9] however, for the reasons noted infra, we nonetheless affirm in part and reverse in part.[10]

It is well established that even when probable cause to arrest exists, "warrantless intrusion of a person's home is prohibited by the Fourth Amendment, absent consent or a showing of exigent circumstances" because "[a] citizen's home is an unquestionable zone of privacy under the Fourth Amendment[.]"[11] And when the State "seeks to justify a warrantless search on grounds of consent, it has the burden of proving that the consent was, in fact, freely and voluntarily given."[12] Indeed, "[v]oluntariness must reflect an exercise of free will, not merely a submission to or acquiescence in the express or implied assertion of authority."[13] Thus, to have lawfully seized the contraband discovered within Austin's home, the State had the burden of proving that Austin voluntarily consented to a search.[14]

The voluntariness of consent to search is measured by evaluating the totality of the circumstances, which includes factors such as prolonged questioning; the use of physical punishment; the accused's age, level of education, intelligence, length of detention, and advisement of constitutional rights; and the psychological impact of these factors on the accused.[15] The actual scope of consent is also evaluated

---

[8] 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

[9] *See, e.g., United States v. Patane,* 542 U. S. 630, 636 (I) (124 SC 2620, 159 LE2d 667) (2004) ("The Self-Incrimination Clause . . . is not implicated by the admission into evidence of the physical fruit of a voluntary statement."); *Taylor v. State,* 274 Ga. 269, 269 (553 SE2d 598) (2001) ("[T]he 'fruit' of a *Miranda* violation is not subject to the exclusionary rule under Georgia law." (footnote omitted)); *Brown v. State,* 292 Ga. App. 269, 273 (1) (663 SE2d 749) (2008) ("The Supreme Court of Georgia has held that the 'fruit' of a voluntary statement obtained in violation of *Miranda* and *Edwards* is not subject to the exclusionary rule." (citations omitted)); *Andrews v. State,* 222 Ga. App. 129, 132 (4) (473 SE2d 247) (1996) ("In Georgia the exclusionary rule does not apply to evidence derived from a voluntary statement obtained without the benefit of *Miranda* warnings." (citation and punctuation omitted)).

[10] *See, e.g., English v. State,* 288 Ga. App. 436, 442 (3) (654 SE2d 150) (2007) ("[A] judgment right for any reason will be affirmed." (footnote omitted)).

[11] *State v. Sims,* 240 Ga. App. 391, 392 (523 SE2d 619) (1999) (citations and punctuation omitted); *see also Hicks v. State,* 287 Ga. App. 105, 106 (2) (650 SE2d 767) (2007) ("[U]nder the Fourth Amendment, police officers are prohibited from entering a person's home or its curtilage without a warrant absent consent or a showing of exigent circumstances." (citation, footnote and punctuation omitted)); *Griffith v. State,* 172 Ga. App. 255, 256 (1) (322 SE2d 921) (1984) ("Absent consent or exigent circumstances, a warrantless entry into a home to conduct a search . . . is unreasonable under the Fourth Amendment." (citations omitted)).

[12] *Hollenback v. State,* 289 Ga. App. 516, 519 (657 SE2d 884) (2008) (footnote and punctuation omitted).

[13] *State v. McMichael,* 276 Ga. App. 735, 739 (1) (624 SE2d 212) (2005) (citation and punctuation omitted).

[14] The State does not contend that the officers' entry into the home was justified by exigent circumstances.

[15] *See, e.g., Hunter v. State,* 190 Ga. App. 52, 53 (378 SE2d 338) (1989).

by examining the surrounding circumstances,[16] using an "objective reasonableness" standard to consider "what . . . a typical reasonable person [would] have understood by the exchange between the officer and the suspect[.]"[17]

In the case sub judice, Austin invited officers to follow him inside his home to examine the handgun he claimed to have fired. There is no indication in the record that Austin was coerced into doing so. Indeed, the idea to lead officers to the gun was Austin's own.[18] And under the circumstances (i.e., the officers having responded to a "shots fired" call and Austin's aggressive demeanor during the investigation), it was perfectly reasonable to handcuff Austin and to leave the handcuffs on as he led officers through his home.[19] Moreover, the fact that a suspect is handcuffed does not in and of itself render his or her consent involuntary.[20] Accordingly, we conclude that Austin voluntarily consented to leading officers through his home to see the handgun he claimed to have fired, resulting in a lawful seizure of that gun and of the small amount of marijuana that officers subsequently observed in plain view.[21]

However, the scope of Austin's consent was limited to showing

---

[16] *State v. Fulgham*, 288 Ga. App. 746, 747 (655 SE2d 321) (2007) ("Where a law enforcement officer's authority to conduct a search is based on consent, the reviewing court measures the scope of that consent by all of the surrounding circumstances." (footnote omitted)).

[17] *Id.* (footnote and punctuation omitted).

[18] *Compare Brooks v. State*, 285 Ga. 424, 426 (677 SE2d 68) (2009) ("The uncontroverted testimony of the officer who conducted the search showed that [the defendant] was cooperative, even friendly toward him, and offered to assist him in locating the gun." (footnote omitted)); *Green v. State of Ga.*, 250 Ga. App. 440, 442 (2) (550 SE2d 736) (2001) ("The mere fact that [the defendant] was being lawfully detained when he gave . . . consent does not render the consent involuntary. . . . Rather, the idea that he would consent to a search of his [home] originated with [the defendant] himself when he told the officers that they could search his [home]." (footnotes omitted)).

[19] *See Gray v. State*, 296 Ga. App. 878, 880 (1) (676 SE2d 36) (2009) ("'[O]fficers may handcuff a suspect as part of an investigatory detention without transforming the detention into a de facto arrest." (citation omitted)); *Montoya v. State*, 232 Ga. App. 24, 26 (1) (b) (499 SE2d 680) (1998) (physical precedent only) ("An officer may take appropriate self-protective measures when he lawfully confronts an individual and reasonably believes him to be armed or otherwise dangerous to the officer or others." (citation and punctuation omitted)). *Cf. Jackson v. State*, 236 Ga. App. 492, 495 (2) (512 SE2d 24) (1999) (holding in context of traffic stop that officer's actions in handcuffing defendant for safety purposes were reasonable under the circumstances because "an officer conducting a stop remains particularly vulnerable" and "must make quick decisions as to how to protect himself and others from possible danger" (citation and punctuation omitted)).

[20] *See Silverio v. State*, 306 Ga. App. 438, 446 (3) (702 SE2d 717) (2010); *Maloy v. State*, 293 Ga. App. 648, 651 (2) (667 SE2d 688) (2008); *Green*, 250 Ga. App. at 442 (2).

[21] *See State v. McTaggart*, 241 Ga. App. 852, 855 (528 SE2d 309) (2000) ("A police officer who observes contraband in plain view is entitled to seize it, so long as he is at a place where he is entitled to be, i.e., so long as he has not violated the defendant's Fourth Amendment rights in the process of establishing his vantage point." (citation and punctuation omitted)).

officers the handgun beneath his mattress,²² and despite the discovery of the marijuana in plain view, "[t]he presence of contraband without more does not give rise to exigent circumstances."²³ Thus, in order to lawfully seize any additional drugs or guns in Austin's home, police were required to obtain additional consent to search. And under the totality of the circumstances, the State has failed to prove that Austin freely and voluntarily consented to expanding the search.²⁴

A Cobb County police officer—who was the sole witness at the motion to suppress hearing—testified that after spotting the small amount of marijuana on Austin's bedside table, he said the following: "Here's some marijuana you have on your bed, [sic] do you have anymore in the house? You know that you can't have that in your house. Why don't you let me know where it is and we'll go ahead and grab it now." In response, Austin looked toward his dresser and said "[i]t's in the drawer." And after retrieving the drugs, the officer asked of Austin, "Do you have any . . . other guns or drugs in the house?" Austin then showed officers where his additional guns were kept throughout the house.

Considering the totality of the circumstances at this point in Austin's encounter with the officers, the State failed to meet its burden of showing that he voluntarily consented to expanding the search of his home.²⁵ Indeed, while Austin "apparently acquiesced to the officer's directive to give him the [additional drugs and guns], we cannot say that single factor demonstrated free consent or showed that [Austin] felt free to refuse to do so."²⁶ Unlike when Austin himself suggested that the officers come inside his home to view his handgun, at the point when Austin consented to the search of his dresser, he (1) was handcuffed inside his home with two officers,²⁷

²² *See McNeil v. State*, 248 Ga. App. 70, 71 (545 SE2d 130) (2001) ("The intrusiveness of the search is limited by the permission granted, and only that which is reasonably understood from the consent may be undertaken." (footnote omitted)); *see also State v. Diaz*, 191 Ga. App. 830, 832 (2) (383 SE2d 195) (1989) ("[T]he scope of the consent clearly did not extend to a full-blown search of the interior and containers found therein." (citation and punctuation omitted)).

²³ *McTaggart*, 241 Ga. App. at 854 (citation omitted).

²⁴ *See State v. Jourdan*, 264 Ga. App. 118, 120-21 (1) (589 SE2d 682) (2003) ("The State has the burden of proving the validity of a consensual search and must show the consent is given voluntarily. . . . Consent is not voluntary when it is the result of duress or coercion, express or implied." (citation, footnotes and punctuation omitted)).

²⁵ *See Walker*, 299 Ga. App. at 791 (2) ("The intrusiveness of a consensual search—including the type, duration, and physical zone of the intrusion—is limited by the permission granted, and only that which is reasonably understood from the consent may be undertaken." (footnote omitted)).

²⁶ *Jourdan*, 264 Ga. App. at 121 (1).

²⁷ *Compare Silverio*, 306 Ga. App. at 446 (3) ("The presence of several police officers does not require a finding of coercion, although it merits close judicial scrutiny." (footnote

(2) knew officers had spotted marijuana in plain view,[28] and (3) was explicitly told "you can't have that in your house."[29] Under these circumstances, we cannot say that "a reasonable person would feel free to decline the officers' request to search or otherwise terminate the encounter."[30]

Accordingly, we affirm the trial court's grant of the motion to suppress as to the bag of marijuana seized from Austin's dresser and as to any additional firearms seized thereafter, but reverse the grant of the motion to suppress as to the handgun located beneath Austin's mattress and the small amount of marijuana found by the officers in plain view.[31]

2. The State further contends that the trial court erred in suppressing the statements Austin made after he was handcuffed by finding that he was in custody for purposes of *Miranda*. Again, we affirm the suppression as to some statements and reverse as to others.

The protections of *Miranda* arise "when an individual is (1) formally arrested or (2) restrained to the degree associated with a formal arrest."[32] And for purposes of the second prong, "an individual is in custody if a reasonable person in the place of the defendant would feel so restrained as to equate to a formal arrest."[33] To this end, "it is not relevant that investigators (1) might have focused their suspicions upon the person being questioned, or (2) have already decided that they will take the person into custody and charge them with an offense, so long as that individual is not in custody."[34]

As explained supra, Austin was handcuffed for purposes of

---

omitted)); *State v. Durrence*, 295 Ga. App. 216, 218 (671 SE2d 261) (2008) (factoring in the presence of "a number of police officers at the scene" in affirming the grant of a motion to suppress). While it was still reasonable under the circumstances for Austin to be handcuffed, *see supra* note 19, this factor warrants additional scrutiny in the context of granting consent to search following the discovery of contraband inside Austin's home. *Cf. Gray*, 296 Ga. App. at 879 (1) ("What is intended to be an investigatory detention can be transformed into a de facto arrest by the means of detention employed." (citation and punctuation omitted)).

[28] *See State v. Stephens*, 289 Ga. App. 167, 169 (657 SE2d 18) (2008) ("[A]ccount must be taken of the possibly vulnerable subjective state of the person who consents." (footnote and punctuation omitted)).

[29] *Compare Durrence*, 295 Ga. App. at 218 ("Although there is no requirement that a defendant be informed of his right to refuse consent, this knowledge is one factor to be considered in assessing voluntariness.").

[30] *Johnson v. State*, 297 Ga. App. 847, 849 (678 SE2d 539) (2009) (citation and punctuation omitted); *see also Jourdan*, 264 Ga. App. at 121 (1) (same).

[31] We note that the State makes no argument that the suppressed evidence should have been admitted under the doctrine of inevitable discovery.

[32] *Tolliver v. State*, 273 Ga. 785, 786 (546 SE2d 525) (2001) (citation omitted).

[33] *Id.* (citation omitted).

[34] *Hardin v. State*, 269 Ga. 1, 3 (2) (494 SE2d 647) (1998) (footnote omitted).

officer safety after he took on what appeared to be a fighting stance while being questioned by an officer, but he was explicitly told at that time that he was *not* under arrest and that the handcuffs were for both the officers' safety and his own. Accordingly, a reasonable person would not have felt that he or she was under formal arrest at that point.[35] Therefore, contrary to the trial court's decision, any statements made by Austin between the time he was placed in handcuffs and the point when the officers discovered marijuana on his bedside table (after Austin voluntarily led them through his home[36]) were admissible even in the absence of *Miranda* warnings.[37]

However, after officers discovered marijuana in plain view in Austin's bedroom, the situation changed. As detailed supra in Division 1, an officer then said to the still-handcuffed Austin, "You know that you can't have [marijuana] in your house. Why don't you let me know where [any additional marijuana] is and we'll go ahead and grab it now." After the officers seized the marijuana from the dresser, one then inquired as to other guns or drugs in the house. Only then did Austin inform the officers as to the locations of his additional firearms. Under these circumstances, a reasonable person would have considered him or her self in custody following the discovery of the marijuana in plain view.[38] Accordingly, consistent with the trial court's decision, any of Austin's statements made thereafter should be excluded.[39]

For all the foregoing reasons, we affirm the trial court's grant of the motion to suppress in part and reverse in part.

*Judgment affirmed in part and reversed in part. Smith, P. J., concurs. Mikell, J., concurs specially.*

MIKELL, Judge, concurring specially.

I respectfully disagree with the case law, which the majority correctly cites just before beginning its Division 1, and which controls this appeal. I urge our Supreme Court to reconsider those

---

[35] *See, e.g., Smith v. State*, 281 Ga. 185, 187 (1) (640 SE2d 1) (2006) (noting that even if defendant had been handcuffed during questioning, "that would not necessarily demand a finding that he was under formal arrest or vitiate the consent to further questioning").

[36] *See supra* Division 1.

[37] *See State v. Brannan*, 222 Ga. App. 372, 376 (2) (c) (474 SE2d 267) (1996) (admitting statements when, although officer suspected that the defendant's actions constituted a crime, "she repeatedly told him he was not charged with any offense").

[38] *See Jackson v. State*, 272 Ga. 191, 193-94 (3) (528 SE2d 232) (2000) ("A reasonable person in Jackson's position, having just confessed to involvement in a crime in the presence of law enforcement officers would, from that time forward, perceive himself to be in custody, and expect that his future freedom of action would be significantly curtailed." (citations omitted)).

[39] *See id.* at 194 (3) ("*Miranda* concerns only questioning initiated by law enforcement officers after a person has been taken into custody." (citation omitted)).

precedents which decree the rules for deciding the appeal of a trial court's decision on a motion to suppress evidence as having been seized in violation of the Fourth Amendment to the United States Constitution.[40]

The rule I object to states that whenever the evidence in the trial court was "undisputed" or "uncontroverted," the review on appeal is de novo. Where testimonial evidence has been adduced in the trial court, de novo review should not be applied by the appellate courts, because only the trial court has seen the demeanor of the witnesses as they take the oath and as they testify. When we apply de novo review, we second-guess the trial court based on a cold record.

But the main problem with de novo review in these cases is that the evidence is almost never undisputed. The evidence in a motion to suppress is undisputed only when it is stipulated. When the evidence depends in any way on testimony, even the uncontradicted testimony of a single witness, as in the case at bar, then the evidence is *disputed*; de novo review is not appropriate; and our standard of review should be "clearly erroneous."[41]

1. The reason "undisputed" evidence is really "disputed" evidence is found in an ancient Georgia rule of law. For 15 years in superior court and state court, I instructed juries that they could believe or disbelieve all or any part of the testimony of any witness. This particular instruction was taken verbatim from the suggested pattern jury instruction.[42]

I am on even firmer ground when I assert that the superior court judges' rule applies with equal force when a trial judge sits alone,

---

[40] E.g., *Silva v. State*, 278 Ga. 506, 507 (604 SE2d 171) (2004), affirming *State v. Silva*, 263 Ga. App. 371 (587 SE2d 762) (2003) (whole court); *Walker v. State*, 299 Ga. App. 788 (683 SE2d 867) (2009); *Wilson v. State*, 293 Ga. App. 136 (666 SE2d 573) (2008); *Snyder v. State*, 284 Ga. App. 350, 351 (643 SE2d 861) (2007), reversed on other grounds, *Snyder v. State*, 283 Ga. 211 (657 SE2d 834) (2008).

[41] In Georgia, the "clearly erroneous" standard is identical to the "any evidence" standard. E.g., *Hanson v. Kent*, 263 Ga. 124 (2) (428 SE2d 785) (1993). Accord *Turpin v. Todd*, 271 Ga. 386, 390 (519 SE2d 678) (1999). The federal rule is different. A "mere scintilla" of evidence on one side will not suffice. See *Brescher v. Von Stein*, 904 F2d 572, 578 (11th Cir. 1990) (in evaluating motions for directed verdict and judgment notwithstanding the verdict, "[a] mere scintilla of evidence is insufficient to present a question for the jury") (citation omitted).

[42] See *Massengale v. State*, 264 Ga. 51-52 (2) (a) (441 SE2d 238) (1994) (jury charge given by trial court was fair and complete where it included language that "the jury may believe or disbelieve all or any part of the testimony of any witness"). See also Council of Superior Court Judges, Suggested Pattern Jury Instructions, Vol. I: Civil Cases (5th ed. 2007), § 00.050 ("You may believe or disbelieve all or any part of the testimony of any witness"); OCGA § 24-4-4 (facts jury may consider in determining where preponderance of evidence lies). "The rules stated in [OCGA § 24-4-4] and given in charge are applicable in determining the credibility of witnesses" in a criminal case. (Citation omitted.) *Andrews v. State*, 196 Ga. 84, 113 (13) (26 SE2d 263) (1943), overruled in part on other grounds, *Frady v. State*, 212 Ga. 84, 85-86 (2) (90 SE2d 664) (1955).

without a jury, as the trier of fact.[43] The rule should apply when the trial judge conducts a bench trial; hears a petition for a temporary restraining order or preliminary injunction; or hears a child custody dispute, a petition for bail bond, or a motion to suppress evidence.[44] The two dissenters in the leading case, *Tate v. State*,[45] relied on the venerable rule that the unimpeached, uncontroverted testimony of a sworn witness may not be "disregarded."[46] But there are controlling precedents which hold that the venerable rule means that the trier of fact must *consider* the testimony of a witness but is not required to *believe* it.[47]

The idea that a different rule from that enunciated in *Tate* applies to motions to suppress originated in the oft-cited decision in *Vansant v. State*.[48] *Vansant* asserted that when the evidence in the trial court was undisputed, and no question of credibility was presented, then the standard of review on appeal is de novo.[49] As argued above, however, a question of credibility *always* arises, and the evidence is *never* undisputed, when the evidence is testimonial.

To promulgate this special rule for the review of motions to suppress, the *Vansant* majority relied on a footnote in an important decision, *State v. Davis*.[50] The defendant, Troy Anthony Davis, was accused of murdering a police officer in Savannah. His two-decade-long fight to evade his death sentence has attracted world-wide publicity.

---

[43] *Miller v. State*, 288 Ga. 286, 289 (2) (702 SE2d 888) (2010); *Chaffin v. Community Loan &c. Co.*, 67 Ga. App. 410 (20 SE2d 435) (1942); *State v. Betsill*, 144 Ga. App. 267, 268 (2) (240 SE2d 781) (1977).

[44] *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994). Much of my argument was made in a scholarly dissent by Judge Barnes in 2003. *Silva*, supra, 263 Ga. App. at 373 (Barnes, J., dissenting). Her argument has been greatly strengthened by the 2010 decision in *Miller*, supra.

[45] Supra at 58-60.

[46] Id. at 59 (Carley, J., dissenting).

[47] The rule that the uncontradicted testimony of unimpeached witnesses can not lawfully be arbitrarily disregarded does not mean that the jury are obliged to believe testimony which under the facts and circumstances disclosed they in fact discredit, but means that they are to consider the testimony of every witness who is sworn, and not arbitrarily disregard the testimony of any witness.

(Citation and punctuation omitted.) *Caldwell v. Caldwell*, 59 Ga. App. 637, 643 (1 SE2d 764) (1939); accord *Sellers v. State*, 107 Ga. App. 516, 519 (130 SE2d 790) (1963) (whole court) ("There is a difference in arbitrarily or capriciously *disregarding* testimony and in *disbelieving* it upon a consideration of all circumstances arising from the evidence") (emphasis in original), cited in *State v. Hester*, 268 Ga. App. 501, 505 (602 SE2d 271) (2004) (whole court) (affirming trial court's grant of defendant's motion to suppress). See also *Tate*, supra at 56 (3) ("trier of fact is not obligated to believe a witness even if the testimony is uncontradicted and may accept or reject any portion of the testimony") (citation omitted); *Pantone v. Pantone*, 206 Ga. 305, 312 (57 SE2d 77) (1950). See generally Agnor's Ga. Evidence (2010-2011) § 18:6.

[48] 264 Ga. 319 (443 SE2d 474) (1994).

[49] Id. at 320 (1).

[50] 261 Ga. 225 (404 SE2d 100) (1991), cited in *Vansant*, supra.

Despite the high-profile nature of the police investigation, the trial judge suppressed highly-incriminating evidence seized from Davis's residence. The state appealed. The Supreme Court of Georgia, following the traditional rule, gave deference to the trial judge's decision and affirmed.[51] But in a footnote, later relied on by the *Vansant* majority, the *Davis* court speculated that a "different" standard of review might apply when the evidence was "undisputed."[52] This footnote is dictum by its terms. And the precedential authority of the *Davis* footnote is further weakened by the fact that the authority cited is introduced with a significant warning, the signal "See generally." Technically speaking, this signal means that what follows does *not* support the point asserted in the text but merely contains information which might shed light on the subject.[53] The footnote in *Davis* is surely the most slender reed ever leaned upon by an appellate court when making a major change in a well-settled rule of law. And neither the state nor the federal decisions mentioned in the *Davis* footnote address the key points, that (1) testimony is never undisputed, and (2) it makes no sense to have a different rule for review of motions to suppress than, for example, bench trials.

2. Another shortcoming of the *Vansant* rule, founded on the footnote in *Davis*, is that it cleverly sidesteps the tried-and-proven precept that, on appeal, all inferences are to be drawn to support the decision of the trier of fact.[54] For example, in the case at bar, whether or not the accused was "in custody" at the time he made statements about the type of gun he had fired and led the officers into the house (telling them about the balky doorknob) was an inference to be drawn from all the circumstances. These circumstances included the handcuffs,[55] the number of officers present, their "tactical" approach to the garage (i.e., with guns drawn), the reassuring statements by the officers, etc. The trial court drew that inference one way and the majority today draws it a different way.

3. The majority, by the way, often raises the issue of whether or not the defendant was at various times under arrest. But the critical factual inference for determining if the *Miranda* warnings should

---

[51] *Davis*, supra at 226-227.

[52] Id. at 226, n. 1.

[53] The Harvard Law Review Assn., The Bluebook: A Uniform System of Citation (17th ed. 2000), Rule 1.2 (d), p. 24 ("See generally" indicates that the "[c]ited authority presents helpful background material related to the proposition" stated).

[54] See, e.g., *In the Interest of E. G.*, 286 Ga. App. 137 (648 SE2d 699) (2007).

[55] The fact that a suspect is handcuffed does not demand a finding that he was under arrest, nor does it vitiate consent to further questioning. But the obvious corollary is that handcuffs do not prevent a contrary finding. *Smith v. State*, 281 Ga. 185, 187 (2) (640 SE2d 1) (2006).

have been given is whether the defendant is in custody, not whether or not he has been arrested.[56]

In conclusion, I concur with the majority and with all that is there written because I believe the majority's analysis is mandated by controlling precedent. But I do urge our Supreme Court to reconsider and overrule that precedent, especially the decision in *Vansant v. State*, an opinion which has caused 17 years of mischief.

DECIDED JULY 13, 2011.

*Patrick H. Head*, District Attorney, *Ann B. Harris, John R. Edwards, Amelia G. Pray, Anna G. Cross*, Assistant District Attorneys, for appellant.

*Thomas E. Griner*, for appellee.

---

[56] *Price v. State*, 269 Ga. 222, 225 (3) (498 SE2d 262) (1998); *Kehinde v. State*, 236 Ga. App. 400, 401 (512 SE2d 311) (1999).